No. 32,158

In the Matter of the Application of The CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY for a Refund of Taxes Paid Under Protest in Butler County for the Year 1932.

(37 P. 2d 7)

 Opinion filed
November 3, 1934. 

*Luther Burns* and *J. E. DuMars,* both of Topeka, for the appellant.

*R. C. Woodward* and *C. Glenn Morris,* both of El Dorado, for respondent The Board of County Commissioners of Butler County; *R. C. Woodward,* of El Dorado, for respondents School Districts 65, 69, 85 and 95, in Butler county.

The opinion of the court was delivered by

DAWSON, J.: This appeal is the culmination of certain proceedings commenced before the state tax commission wherein the Chicago, Rock Island & Pacific Railway Company sought to recover certain alleged excess taxes for 1932, which it had paid under protest in Butler county.

The first half of the railway company's taxes for 1932, as computed by the local and state taxing officials, was $3,174.45, which, according to the written protest of appellant, was $1,824.38 in excess of the reasonable requirements of the county and its subdivisions through which the railway lay. The second half of the company's taxes for 1932 was paid under a similar protest.

On July 31, 1933, the railway company filed with the state tax commission its application for an order requiring Butler county to refund the amount of these alleged excessive and protested taxes.

The state tax commission, on notice to all parties concerned, held a public hearing and after consideration made the following administrative rulings:

"County general fund: The board of county commissioners fixed a rate of levy of 1.13 mills for this fund, of which the applicant contends 1.05 mills is excessive, for the reason that the county general fund had a balance, which, if taken into consideration, would materially reduce the levy. It is the finding of the commission that the balance shown in this fund is not unreasonable. . . .

"County road fund: The board of county commissioners fixed a rate of levy of 1.097 mills for this fund, of which the applicant contends .796 mills is excessive, for the reason that the county road fund had a balance, which, if taken into consideration, would materially reduce the levy. It is the finding of the commission that the balance shown in this fund is not unreasonable. . . .

"School districts 65, 69, 85 and Jt. 95: As to these districts, applicant contends that the rate of levy in each of these districts was excessive, for the reason that certain balances were not taken into consideration in determining the rate of levy. The commission, after carefully examining the financial statements of these four districts, finds that the balances on hand were not

unreasonable, and for that reason the prayer of the petitioner is denied. . . ."
[Dated January 17, 1934.]

From this disposition of its application for a refund the railway company filed in the district court an "appeal," and served notice thereof on the county and school district boards concerned. Motions to dismiss were lodged against the appeal on various grounds, the first and fourth of which were that the district court had no jurisdiction of the subject matter and was without appellate power to review the action of the state tax commission. These motions were sustained, and the appeal was dismissed. .

The railway company now brings the matter to this court to determine the propriety of that judgment.

Apart from the general appellate jurisdiction of the district court over all inferior tribunals exercising judicial powers conferred by the civil code (R. S. 60-3301), that court has no inherent appellate jurisdiction over the official acts of public boards or public officers. Where the latter do not transcend their statutory powers nor act fraudulently or oppressively their official acts cannot be challenged in court except where the legislature has made some special provision for a judicial review. (*State, ex rel., v. Mohler,* 98 Kan. 465, 158 Pac. 408, syl. ¶ 9.) Familiar examples of such statutory review of the action of a nonjudicial tribunal are the appeals which may be taken to the district court from the awards of the workmen's compensation commission and the regulatory orders of the state corporation commission. In *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1154, where the power of the district court to review the official action of the board of moving-picture censors was under consideration, it was said:

"What is the redress provided? Manifestly, it is such redress as a court can give, and not an exercise of executive or administrative power. A reexamination of the picture to determine whether it was moral and fit for exhibition would be an exercise of administrative power, and that discretion and power was specially conferred upon the board. It would result in the substitution of the judgment of the court for that of the board in a pure matter of administration, which the legislature could not and evidently did not intend to confer upon the district court. It is fundamental that courts cannot be required or permitted to exercise any power or function except those of a judicial nature. (*Auditor of State v. A. T. & S. F. Railroad Co.,* 6 Kan. 500.) An aggrieved party may call on the court for judicial redress and not for the performance of a nonjudicial or administrative function. . . . In *Symns v. Graves,* 65 Kan. 628, 70 Pac. 591, where the court was asked to review the action of the board of equalization in fixing the valuation of property for the purpose of taxation, it was said:

" 'Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges, who are not elected for that purpose, with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. . . . But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity. (p. 636.)'

. . . . . . . . . . . . . . . . . .

"There have been repeated holdings that the decisions of a board or other tribunal upon which the legislature has conferred the exercise of nonjudicial power, if made in good faith, are not open to judicial control or review." (pp. 358, 359.)

Of course the courts are always open to hear meritorious complaints against illegal or oppressive acts or delicts of nonjudicial public boards and officials, either at the instance of the state or of a private citizen especially aggrieved thereby. But not by appeal— where no statute confers a right of appeal. In the absence of a statutory right of appeal, judicial redress for illegal, fraudulent or oppressive official conduct must be invoked through some extraordinary legal remedy recognized in our practice—injunction, mandamus or quo warranto. (*State, ex rel., v. Mohler*, supra, 471, 472.)

What is said and quoted above is particularly pertinent in respect to matters of taxation which are essentially legislative and administrative in character. The old case of *Auditor of State v. A. T. & S. F. Railroad Co.*, 6 Kan. 500, is instructive. In 1869 the legislature enacted a statute giving the parties concerned a broad right of appeal from an appraisal of railway property for purposes of taxation. In part it read:

"Sec. 11. The state auditor, or any railroad company interested in the appraisal and assessment hereinbefore provided for, may appeal from the appraisement and assessment made and returned to the state auditor by the board of appraisers and assessors hereinbefore provided for. Whenever in the opinion of said auditor, such appraisement is too low, he may take such appeal to the supreme court of the state, by notifying the company interested of his intention to take such appeal, within ten days from the time when the return is so made to him by the board of appraisers and assessors as is hereinbefore provided; and whenever, in the opinion of any railroad company, whose property has. been so appraised and assessed, such appraisement has been fixed too high, such railroad company may appeal from such appraisal and assessment to the supreme court." (Laws 1869, ch. 124, § 11.)

Invoking the section of the statute just quoted, the state auditor appealed to this court from an appraisal of the railway property by the taxing officers on the ground that it was too low. While the decision went off on the obvious ground that the action sought to be maintained was not within the original jurisdiction of the supreme court, the nature of the limits of judicial power in respect to taxation matters were pertinently stated by Chief Justice Kingman:

"The raising of money for the support of government is essentially a legislative function. Where the money is raised by taxation, an ascertainment of the value of the property is a necessary prerequisite, and therefore an incident to the power to tax. It would be competent for the legislature to appoint commissioners for this purpose who should report directly to the legislature, who could revise and correct such valuation. That the inconvenience of such a mode would preclude its adoption, is no argument against the power. The power exists, and is a legislative power, and shows conclusively that it cannot be a judicial power. . . . The assessment of the property of the state, being then an incident to the taxing power, which is wholly legislative and not judicial, may well be ascertained by agents appointed under the law; but in no sense under our constitution can such agents be considered judicial officers. It is true that their duties require of them judgment and discretion; but this is also true of most of the duties of ministerial and executive officers, but this does not make them judicial officers, nor constitute them courts, or render their conclusions judicial acts; and, not being such, it follows, from what has been heretofore said, that there can be no appeal from the decision of such agents to this court, and the duty imposed upon this court by the act of 1869 is one not permitted by the constitution, for it is not one of the enumerated cases in which the court has original jurisdiction, nor is it within the scope and meaning of the appellate jurisdiction which may be conferred upon the court." (pp. 507, 508.)

See, also, *Silven v. Osage County,* 76 Kan. 687, 92 Pac. 604; 10 L. R. A., n. s., 716 and note.

While methods and procedure in taxation matters have been changed by legislation from time to time since the case of *Finney County v. Bullard,* 77 Kan. 349, 94 Pac. 129, 16 L. R. A., n. s., 807, was decided, part of the opinion of Chief Justice Johnston in that case is still pertinent:

"While the court has found that the valuation placed on Bullard's property is excessive, there is no intimation that it was fraudulently done, nor that it was an intentional discrimination in order to compel Bullard to pay more than his share of the taxes of the county; nor, as before-stated, does it appear that he has been required to pay more than his proportionate share of taxes. There was a difference of opinion between him and the assessors as to the value of his lands as compared with those of others. The tax law provides a board of equalization to settle such differences of opinion, and it is one to which every

taxpayer may apply. In revising and equalizing assessments that board has necessarily a broad discretion, and its decision, however erroneous, is plenary and final when fairly and honestly made. . . .

". . . The law does not give an appeal from the board of equalization to the court, nor does it warrant the court in substituting its opinion of values for that of the officers who are invested by law with the sole authority to determine values. The statute does not contemplate, nor would it be practical to permit, a review and revaluation in the courts of the state at the instance of taxpayers who might complain of overvaluation by assessors. The remedy for irregular or excessive assessments before the board of equalization was deemed by the legislature to be an adequate one, and in the absence of other grounds it is an exclusive remedy." (pp. 356, 357.)

In view of the foregoing the contentions of the railway company can be readily disposed of. Neither the taxing officials nor the taxing boards of this state are judicial functionaries, so the provisions of the civil code for taking appeals to the district court from inferior judicial tribunals do not apply. And while the Kansas theory for the administration of justice favors the right of appeal, such appeals must relate to matters which judicial tribunals are equipped to determine. The legislature has supplied the courts with no yardsticks to determine what sums of money the taxing authorities in their discretion may levy and collect so long as they stay within the limits of the levies authorized by statute. When the state tax commission conducted a hearing and found that the balances in the various funds of the taxing districts of Butler county were not so large as to establish the railway company's complaint that the taxes collected on its property were excessive and unreasonable, that conclusion and determination was not a judgment or decree of a judicial nature from which an appeal would lie. It was merely the disposition of a matter which the legislature had lodged in its administrative discretion.

The order of the district court in dismissing the appeal was correct, and its judgment is therefore affirmed.