**UNITED STATES of America,**
**Plaintiff,**

v.

**Raymond LILLARD, Defendant.**
**No. 1350.**

United States District Court
W. D. Missouri, S. D.

July 24, 1956.

Edward L. Scheufler, U. S. Atty., Paul R. Shy, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Donald J. Hoy, Flavius Freeman, Springfield, Mo., for defendant.

RIDGE, District Judge.

This suit was commenced under the Agricultural Adjustment Act of 1938, as amended and supplemented, 7 U.S.C.A. §§ 1281 to 1393; Act of Jan. 30, 1954, 68 Stat. 4; and Act of Aug. 28, 1954, 68 Stat. 897, to recover from defendant $401.41, as penalty for farm marketing excess of wheat in the year 1954. Section 376 of the Act, 7 U.S.C.A. § 1376 and 28 U.S.C.A. § 1345 place jurisdiction of the subject-matter of this action in this Court.

Defendant has moved for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. Immediately thereafter plaintiff filed its motion for summary judgment under the same procedural rule. From the pleadings on file and admissions of fact garnered from interrogatories propounded by both parties, these pertinent undisputed facts are adduced.

Defendant harvested wheat in 1954, on his farm in Laclede County, Missouri, and shared in the proceeds thereof. On the 22nd day of July, 1954, defendant received from the Laclede County Production and Marketing Administration Committee a form entitled, "Notice of 1954 Farm Marketing Quota and Farm Marketing Excess of Wheat," which informed defendant of the following facts concerning his farm: that the Committee had determined that the 1954 wheat acreage on defendant's farm was twenty-eight (28) acres; that the farm wheat acreage allotment for defendant's farm for 1954 was zero (0) acres; that the excess acreage of wheat was twenty-eight (28) acres; that the 1954 normal wheat yield per acre was twelve and eight-tenths (12.8) bushels; that the normal production of acreage allotment for that year was zero (0) bushels; and that the farm marketing excess of wheat on defendant's farm for 1954 was three hundred and fifty-eight and four-tenths (358.4) bushel.

Defendant admits that after the mailing of the foregoing notice of his farm marketing quota he did not apply to his County Committee for a downward adjustment of the farm marketing excess of wheat so determined for his farm, 7 U.S.C.A. § 1340; 7 C.F.R. 728.461, and that he failed to apply within fifteen (15) days pursuant to the Act, 7 U.S.C.A. § 1363; 7 C.F.R. 728.465, for a review by a Reviewing Committee, of the farm acreage allotment, wheat marketing quota, wheat marketing excess, or any of the other determinations made in connection therewith, and contained in said notice. See 7 C.F.R. 711.1(q), 711.5, and 711.7 to 711.12, incl.

The parity price per bushel of wheat, as of May 1, 1954, being $2.50, the rate of penalty applicable to the 1954 crop of wheat is $1.12 per bushel. 7 U.S.C.A. § 1340(2), as amended; 7 C.F.R. 728.-475, as amended. The total penalty of $404.41 is sought by plaintiff since defendant has failed to mitigate the penalty by paying any amount of the wheat marketing quota penalty, or by depositing any funds with the Laclede County ASC Committee as security for the payment of said funds, or by delivering the farm marketing excess of wheat, or any part thereof, to the Secretary of Agriculture or his representative. 7 U.S.C.A. § 1340(3), 7 C.F.R. 728.482, 728.-483.

Defendant by his motion for summary judgment contends that the farm marketing excess of wheat determined for his farm as above, is illegal, void and unenforceable, because (1) the Government failed to give defendant notice of his acreage allotment as required by the Act; and (2) that the purported zero acreage allotment is null and void, as being contrary to regulations promulgated by the Secretary of Agriculture pursuant to the Act. Defendant further asserts that plaintiff's motion for summary judgment must be denied because a question of fact is presented by plaintiff's claim as to the actual amount of wheat acreage harvested by defendant in the year 1954.

On the other hand, plaintiff maintains that the defenses raised by defendant have now become moot, in light of certain admissions of fact made by defendant, and that plaintiff is entitled to judg-

ment herein as a matter of law. Plaintiff posits its right to judgment on the proposition that the defendant has not heretofore exhausted administrative remedies available to him to have the farm marketing of excess wheat as determined by the County ASC Committee reviewed or adjusted downward as provided in the Act, and thereby is precluded from now contending that there is anything deficient with respect to the administrative determination of defendant's farm marketing excess of wheat as made by the Laclede County Committee.

Defendant's first contention, that the Government failed to give him the notice of wheat acreage allotment as required by statute, is premised on the provisions of 7 U.S.C.A. § 1362, which reads as follows:

"All acreage allotments, and the farm marketing quotas established for farms in a county or other local administrative area shall, in accordance with regulations of the Secretary, be made and kept freely available for public inspection in such county or other local administrative area. An additional copy of this information shall be kept available in the office of the county agricultural extension agent or with the chairman of the local committee. *Notice of the farm marketing quota of his farm shall be mailed to the farmer.* [Emphasis defendant's.]

"*Notice of the farm acreage allotment, established for each farm shown by the records of the county committee to be entitled to such allotment shall insofar as practicable be mailed to the farm operator in sufficient time to be received prior to the date of the referendum.*" (Emphasis ours.)

In this case the Government admittedly did not send the defendant notice of his farm acreage allotment before the referendum of August 14, 1953. The first notice given defendant by the local ASC Committee was on July 22, 1954, in respect to his farm marketing quota. To fully appreciate defendant's conten-

tion that failure of the local ASC Committee to give the statutory notice as provided in Section 1362, supra, and that such failure constitutes a defense available to defendant, one must unravel and comprehend some of the intricateness of the Act and Regulations of the Secretary of Agriculture, promulgated pursuant thereto.

In 1953, the Secretary of Agriculture, under the Agricultural Adjustment Act of 1938, as then amended, was required, not later than July 15th of each marketing year for wheat, to ascertain and proclaim the national acreage allotment for the next crop of wheat. 7 U.S.C.A. § 1332. By the Act of Aug. 28, 1954, the proclamation date was changed from July 15 to May 15. 7 U.S.C.A. § 1332. Between the date of the issuance of any such proclamation and August 15th following, the Act provided that a referendum by secret ballot, of farmers who will be subject to the quota specified therein, be held to determine whether such farmers favor or oppose such quota. 7 U.S.C.A. § 1336. July 2, 1953, the Secretary promulgated such a proclamation respecting the national marketing quota for wheat for the 1954–1955 marketing year. 18 F.R. 3780, 7 C.F.R. 728.402. At the referendum held under such proclamation on August 14, 1953, the wheat marketing quota set by the Secretary was approved by farmers then engaged in the production of wheat. 18 F.R. 5707, 7 C.F.R. 728.-409. It was not until July 29, 1953, that the apportionment of the national acreage allotment for the 1954 crop of wheat was made among the several states. 18 F.R. 4419, 7 C.F.R. 728.-406. Only after the national and state acreage allotment for wheat is made can such allotment be apportioned among the counties in a state, and among the farms within a county. We need not delineate the manifold duties that must necessarily be performed by the Secretary and the various State, County and Local Committees, nor the length of time required, in the making of such allotments. It is so obvious from the statutory

scheme devised by the Act for the determination of marketing quotas and acreage allotments, that the Court can take judicial notice of the fact that until an apportionment of the national acreage allotment for wheat is made among the several states and thereafter among the counties of the state, the local ASC Committees established by the Act could not completely function in respect to any determination of acreage allotment, or wheat marketing quota for individual farms; and that as a consequence of the short time element in 1953, between the date of proclamation for the holding of a referendum as required by the Act, and the determination of state, county and farm apportionments to be made thereunder, that it would not be practical, if not impossible, for a local ASC Committee to give notice of individual farm allotments, within a limited period of sixteen (16) days. The Congress must have recognized that fact, and such recognition must have been the reason for incorporating in Section 1362, supra, the provision for giving "notice of the farm acreage allotment established for each farm * * * insofar as practicable * * * prior to the date of the referendum."

Failure to give a farmer notice of his farm acreage allotment, prior to the date of the referendum to be conducted under the A.A.A. does not militate against "due process" as defendant here contends, nor is a farmer deprived of any benefits, privileges or rights he might otherwise have under such Act as a consequence thereof. Every farmer "who will be subject to the *quota* specified" in the Act is eligible to vote in the referendum provided for determining wheat marketing quotas. 7 U.S.C.A. § 1336. Every wheat farmer who intends to harvest and market more than fifteen (15) acres of wheat from any farm in any wheat marketing year, subjects his wheat farm to a farm marketing quota, 7 U.S.C.A. § 1340, and is thereby unquestionably qualified to vote in the referendum. Regulations promulgated by the Secretary for "Holding of Referenda on Marketing Quotas" 6 F.R. 5616, 7 C.F.R. 717.1 to 717.13, do not provide for individual notice to be given to farmers, of the time, place and manner of holding the referendum, but the provisions made therein provide for public notice regarding such matters, and the nationwide publicity actually given thereof through medium of press, radio and other means of communication (of which the courts will take judicial notice) is wholly adequate to advise farmers of such matter and that their farm will be subject to marketing quotas.

Defendant, in alleging failure of "notice of acreage allotment" and claim of lack of due process as a consequence thereof as a defense herein, has apparently misconstrued the Act and Regulations in respect to "Notice of the Farm Marketing Quota" and "Notice of the Farm Acreage Allotment," and the right of review in respect to both such matters. Said phrases are not used interchangeably in the Act. In 7 U.S.C.A. § 1340(1) the "farm marketing quota" is determined by "the *actual production* of the acreage planted to wheat on the farm, less the *normal production or* the *actual production,* whichever is the smaller, of that acreage planted to wheat on the farm which is in excess of the farm acreage allotment for wheat." (Emphasis added.) The "farm acreage allotment" is the amount of wheat acreage determined by the County Committee, which may be seeded on a farm. "Farm acreage allotment" is not the same, but is only one of the determinative elements of a "farm marketing quota." As above demonstrated, notice of the "farm marketing quota" cannot be given under the Act and Regulations supplementing the Act until the crop is ready for harvest and the time has passed for the producer to adjust his excess planted acreage to the farm acreage allotment by the utilization of his excess wheat acreage as a cover crop or for some other reason for which the farmer is exempted from the delimitations of the farm marketing quota by the Regulations. 7 C.F.R. 728.493–728.494.

Under the Act and Regulations, "notice of the farm marketing quota of his farm (must) be mailed to the farmer." (Par. added.) 7 U.S.C.A. § 1362; 7 C.F.R. 711.5. "Any farmer who is dissatisfied with his farm marketing quota may, within fifteen days after mailing to him of (such) notice * * * have such quota reviewed." 7 U.S.C.A. § 1363. The term "quota" as used in the Act, means marketing quota as determined by Section 1340(1), supra, "and, for purposes of review (is) deemed to include the acreage allotment, normal yield or actual yield established or determined in connection therewith." 7 C.F.R. 711.1 (g).

A close reading of the Act and Regulations will show that the local ASC Committee here considered fully complied with the mandatory requirements of giving defendant notice of his farm marketing quota. Notice of that matter was mailed to the defendant on the 21st day of July, 1954, and admittedly received by defendant on the 22nd day of July, 1954. In view of the fact that the "quota" cannot be determined until wheat is nearly ready to be harvested, and that under the Act and Regulations notice given in respect thereto must also contain information as to defendant's farm acreage allotment (7 C.F.R. 711.5) and both such matters are thereafter subject to review (7 C.F.R. 711.1(g) under adequate review procedure (7 C.F.R. 711.7 to 711.33) defendant's claim of untimely notice and lack of due process as here made is without merit.

Defendant's second contention, that the zero acreage allotment made for his farm is null and void, as being contrary to the regulations, and to the Act, is also without merit. In substantiation of that matter, defendant cites 7 C.F.R. 728.416(c) (4) which provides that "a zero base acreage shall be established only for a farm on which no wheat will be seeded for 1954 under the crop rotation system for the farm." That provision of the Regulations is applicable only to "old wheat farms." An "old farm" means a farm on which wheat was seeded for the production of wheat in one or more of the three years, 1951 through 1953. 7 C.F.R. 728.411(j). Before an "old farm" operator becomes entitled to a farm acreage allotment, a request therefor must be made and certain information supplied the County Committee by the farm operator. 7 C.F.R. 728.415. Defendant, in answer to interrogatories propounded to him, stated, "I do not recall furnishing any such information" to his local ASC Committee, or any other Agency of the United States Department of Agriculture requesting a farm acreage allotment. Such answer can only be interpreted to mean that defendant failed either to request an acreage allotment or to furnish the County Committee with the information necessary for the determination of such an allotment for his farm, if he claims to have an "old wheat farm" as provided by the Regulations, supra. As a consequence of defendant's failure in this respect, he was not entitled to any allotment as an old farm operator, as there was no duty on the local ASC Committee to give defendant notice that he had a zero acreage allotment for his farm, until it was shown by the records of the County Committee that defendant was entitled to an allotment. Notice of a farm acreage allotment, therefore, is not required by the Act to be given to defendant until his farm marketing quota was mailed to him. A "new farm" under the Act means a farm on which wheat will be seeded for the production of wheat in 1954 for the first time since 1950. 7 C.F.R. 728.411(i). A new farm only becomes eligible for an acreage allotment if a request for an allotment was made prior to July 1, 1953, and certain specified information is furnished in connection with such request to the County Committee. 7 C.F.R. 728.419. Until the County Committee receives information from farmers or other sources in respect to a farmer's intention to produce and harvest wheat in any marketing year, so that the Committee may make a determination and compile lists as to acreage allotments and quotas,

the County Committee may determine a "none" allotment and "none" quota for such a farm. 7 C.F.R. 711.3, 711.4.

The Regulation 728.416(c) (4), supra, relied upon by defendant, relates to "base acreage" determinations and is only pertinent to the establishment of "wheat acreage allotments" for "old farms" where the "data for old wheat farms" has been supplied to the local ASC Committee by the owner, operator, or any other interested person. In the context that the "no zero" provision is found in the Regulations, it is made manifest that it does not bind the local ASC Committee in respect to the making of a "none" allotment, or quota, for a farm where no information is given to the Committee by the owner, operator, or some other interested person, as required by the Regulations and the Act. Therefore, in light of admissions made that he did not furnish his local ASC Committee with data sufficient to make a "farm acreage allotment," or "quota", defendant does not fall within the ambit of the "zero" provision contained in the Regulations as he here asserts.

■ Defendant further contends that his zero acreage allotment is null and void, since 7 U.S.C.A. § 1340(7) provides that "a farm marketing quota on corn or wheat shall not be applicable to any farm on which the acreage planted to the commodity is not in excess of fifteen acres." This provision can be interpreted in only one way; it does not prohibit the issuance of a zero acreage allotment, or any other allotment, but merely provides that a farmer may plant up to and including fifteen (15) acres of wheat or corn without an acreage allotment or quota; however, if a farmer plants in excess of fifteen (15) acres, then the farm marketing quota and acreage allotment provisions apply. In the case at bar, defendant could have planted fifteen (15) acres of wheat, even though he had a zero acreage allotment, and would not have been subject to a penalty, but since he planted more than fifteen (15) acres of wheat a farm marketing quota is applicable to his farm and de-

fendant is liable to pay a penalty on all the wheat produced, not just the wheat in excess of the fifteen (15) acres.

■ Notwithstanding the fact that defendant's contention that his zero acreage allotment is null and void, is without merit, in view of the fact that defendant failed to exhaust his administrative remedies, defendant is also precluded from contending at this time that there is anything defective with respect to the determinations made by the Laclede County Committee. The Act itself, 7 U.S.C.A. § 1363 provides for a review of the County Committee's determinations, and 7 U.S.C.A. § 1365 further provides for judicial review of the decision of the review committee. Pursuant to Regulations issued by the Secretary of Agriculture under the authority vested in him by 7 U.S.C.A. § 1375, the proper procedure for a review of the farm marketing quota is set forth in 7 C.F.R. 728.465(a) (b). The defendant could have challenged the County Committee's determination of the farm marketing allotment, the farm marketing quota, the farm marketing excess, the actual acres of wheat planted, or any other determination established for his farm, by utilizing the appropriate review procedure, after the notice containing these factors was mailed to him on July 21, 1954. He failed so to do. Since the defendant admits that he raised wheat in the 1954 marketing year; that he was given a notice of his farm marketing quota, farm acreage allotment and the amount of wheat that he had over-planted; and that he did not thereafter apply for a review of the County Committee's determination pursuant to the Act, the original determination of those matters is final and defendant may not defend this action on the grounds of any allegedly wrong administrative determinations. 7 U.S.C.A. § 1363. Defendant's failure to exhaust his administrative remedies not only bars defendant from contesting the County Committee's determination but also leaves this Court without any legal power er to grant defendant any relief from the

penalty imposed. United States v. Bond-
erer, D.C.W.D.Mo.W.D., 139 F.Supp.
391.

Defendant's motion for summary judg-
ment is hereby denied.

Plaintiff's motion for summary judg-
ment is hereby sustained.

It is, therefore, ordered, adjudged and
decreed by this court, that the plaintiff
have and recover of and from defendant
the sum of $401.41.