Felix CORPSTEIN and Joseph Corpstein, Individually, and Corpstein Brothers, a partnership, consisting of Felix Corpstein and Joseph Corpstein, Appellants,

v.

UNITED STATES of America, Appellee.

Felix CORPSTEIN, Joseph Corpstein, and Corpstein Brothers, a partnership, consisting of Felix Corpstein and Joseph Corpstein, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 5923, 5924.

United States Court of Appeals
Tenth Circuit.

Dec. 2, 1958.

James S. Lester, Oskaloosa, Kan., for appellants.

Neil Brooks, Atty., Dept. of Justice, Washington, D. C. (J. Stephen Doyle, Jr., Atty., Dept. of Justice, Washington, D. C., Wilbur G. Leonard, U. S. Atty., Topeka, Kan., E. Edward Johnson, Asst. U. S. Atty., Topeka, Kan., Giles H. Penstone, Atty. in Charge, Dept. of Agriculture, Kansas City, Mo., and Donald A. Campbell, Atty., Dept. of Agriculture, Washington, D. C., on the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

PER CURIAM.

The United States brought these actions to recover penalties alleged to be due as a result of wheat grown by defendants during the years 1955 and 1956 in excess of their farm marketing quotas as defined by the provisions of the Agricultural Adjustment Act of 1938, as amended. 7 U.S.C.A. § 1281 et seq. The cases involve the same facts and identical issues of law, and have been consolidated for disposition. These appeals are from summary judgments in favor of the United States.

The defendants contend that the Act is unconstitutional. The power of Congress to regulate agriculture in the manner it did is no longer open to debate. The constitutionality of the Act was upheld in Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122, wherein the various objections made by the defendants here were considered at length. The court discussed without criticism the provision for a referendum of farmers conducted by the Secretary of Agriculture to determine whether they favor the quota

established by him.[1] See also Secretary of Agriculture v. Central Roig Refining Co., 338 U.S. 604, 70 S.Ct. 403, 94 L.Ed. 381; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; United States v. Kissinger, 3 Cir., 250 F.2d 940, certiorari denied 356 U.S. 958, 78 S.Ct. 995, 2 L.Ed.2d 1066; Shafer v. United States, 4 Cir., 229 F.2d 124, certiorari denied 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460.

The defendants also claim that their allotments were grossly erroneous, arbitrary, discriminatory, capricious and confiscatory, and that these objections raised issues of fact requiring a trial. The record discloses that the defendants in each instance, were notified of the administrative determination of their farm wheat acreage allotment, excess acreage of wheat, the normal yield of wheat per acre, and the farm marketing excess of wheat. They did not apply to a local committee for a review of these determinations. Under the provisions of the Act, courts are limited to a review of the action of a local review committee whose findings of fact, if supported by evidence, are conclusive, and the jurisdiction of the courts is limited to the consideration of questions of law. 7 U.S.C.A. § 1366. The defendants having failed to exhaust their administrative remedies, the District Court was without jurisdiction to review the action taken with respect to their farm marketing excess of wheat. Donaldson v. United States, 6 Cir., 258 F.2d 591; Miller v. United States, 6 Cir., 242 F.2d 392, certiorari denied 355 U.S. 833, 78 S.Ct. 48, 2 L.Ed.2d 44; United States v. Stangland, 7 Cir., 242 F. 2d 843; Lee v. Roseberry, 6 Cir., 200 F. 2d 155; Smith Land Co. v. Christensen, 10 Cir., 148 F.2d 184; United States v. Lillard, D.C.W.D.Mo., 143 F.Supp. 113.

Affirmed.

---

1. In Wickard v. Filburn, 317 U.S. 111, 115–116, 63 S.Ct. 82, 84, 87 L.Ed. 122, it was said:

"The Act provides further that whenever it appears that the total supply of wheat as of the beginning of any marketing year, beginning July 1, will exceed a normal year's domestic consumption and export by more than 35 per cent, the Secretary shall so proclaim not later than May 15 prior to the beginning of such marketing year; and that during the marketing year a compulsory national marketing quota shall be in effect with respect to the marketing of wheat. Between the issuance of the proclamation and June 10, the Secretary must, however, conduct a referendum of farmers who will be subject to the quota to determine whether they favor or oppose it; and if more than one-third of the farmers voting in the referendum do oppose, the Secretary must prior to the effective date of the quota by proclamation suspend its operation.

"On May 19, 1941 the Secretary of Agriculture made a radio address to the wheat farmers of the United States in which he advocated approval of the quotas and called attention to the pendency of the amendment of May 26, 1941, which had at the time been sent by Congress to the White House, and pointed out its provisions for an increase in the loans on wheat to 85 per cent of parity. He made no mention of the fact that it also increased the penalty from 15 cents a bushel to one-half of the parity loan rate of about 98 cents, but stated that 'Because of the uncertain world situation, we deliberately planted several million extra acres of wheat. * * * Farmers should not be penalized because they have provided insurance against shortages of food.'

"Pursuant to the Act, the referendum of wheat growers was held on May 31, 1941. According to the required published statement of the Secretary of Agriculture, 81 per cent of those voting favored the marketing quota, with 19 per cent opposed."

At page 130, of 317 U.S., at page 92 of 63 S.Ct. the Court, in commenting on the referendum, stated:

"In its effort to control total supply, the Government gave the farmer a choice which was, of course, designed to encourage cooperation and discourage non-cooperation."