No. 47,696

THE STATE OF KANSAS, *ex rel.*, KEITH SANBORN, District Attorney of the 18th Judicial District and on behalf of HELEN V. WOODMAN, Election Commissioner of Sedgwick County, *Appellee*, v. UNIFIED SCHOOL DISTRICT 259, JO BROWN, DANIEL GLICKMAN, ROBERT M. KOEPKE, DON L. MILLER, GARY N. POTTORFF, RUBY TATE, EVELYN WHITCOMB and ROBERT F. HAYS, *Appellants*.

(542 P. 2d 664)

Opinion filed November 8, 1975.

*Robert C. Foulston* and *Charles E. Cole, Jr.*, of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause and were on the brief for the appellants.

*Clifford Bertholf*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Keith Sanborn*, district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: The ultimate issue in this case is whether Unified School District No. 259 (the Wichita school system) must reimburse

Sedgwick County for the direct expenses of the general school election conducted by the county election commissioner on April 3, 1973. On that date general elections were held in all the various cities and school districts in Sedgwick County. On June 21, 1973, the county election commissioner billed the school district for the direct expenses of its election in the amount of $20,532.02. When the school district refused to pay, the district attorney instituted this mandamus action in the name of the state to compel such payment.

The election commissioner's bill to the school district was based on K. S. A. 25-2201 (*b*), which at that time provided:

"The direct expenses of any primary, general and question submitted elections which are township, city, school or community junior college elections, *except for such elections that are held on the same day in every precinct in the county,* shall be reimbursed to the county by the township, city, school or community junior college district for which such expenses are incurred. Indirect expenses of such elections shall not be reimbursed to the county." (Emphasis added.)

In the court below the school district contended that it was not liable because its election came within the exception contained in the emphasized portion of the statute. The state, through the district attorney, contended that the exception was not applicable, and further, that the district had waived its right to contest liability by failing to pursue an available administrative remedy. The district court ordered the school district to reimburse the county, based on a finding that the exception was inapplicable. The district has appealed, and the state has cross-appealed to preserve its procedural contention.

We are convinced the state is correct in its assertion that the administrative remedy is exclusive. The apportionment of election expenses among subdivisions of government is covered by one act, Laws 1968, ch. 53, as amended (K. S. A. 25-2201 through 25-2205). Sec. 1 (25-2201) requires apportionment and reimbursement; sec. 2 (25-2202) directs the county election officer to make the apportionment and submit statements for reimbursement; sec. 3 (25-2203) establishes a state election board to oversee the apportionment and adopt appropriate rules and regulations; sec. 4 (25-2204) affords a subdivision aggrieved by the county election officer's decision a right of appeal to the state election board. It provides:

"In the event that any subdivision of government receives a statement of apportionment of election expense from a county election officer and is aggrieved thereby, the governing body of such subdivision of government may within

thirty (30) days after the receipt of such statement appeal to the state election board specifying such changes as it believes should be made in such statement. In accordance with its rules and regulations, the state election board shall receive and determine such appeal, with or without hearing, and issue an order confirming the statement as made or providing that certain changes be made in the statement. *The determination of the state election board of any appeal under the provisions of this section shall be conclusive, and shall be the exclusive remedy in such cases.* Mandamus action may be maintained to enforce any order of the state election board." (Emphasis added.)

The school district did not appeal to the state election board, but instead sat back and waited to be sued. It takes the position that the board has jurisdiction only in cases where the *amount* of expenses is in dispute, but not in those where the question is whether liability exists at all. (The school district concedes that if it is liable, the amount claimed is correct.)

On this point the trial court agreed with the school district, holding that the appeal procedure was not exclusive. To hold otherwise, it said, "would be to hold that the State Election Board is the sole judge of how the contested phrase in K. S. A. 25-2201 (*b*) should be interpreted, and that is clearly a judicial function, not an administrative one." The school district was therefore allowed to present its defense without having pursued the administrative remedy.

We believe this was error. The right of appeal is granted to any subdivision that is "aggrieved" by a statement for expenses. Surely a school district is "aggrieved" by receiving a bill it feels it does not owe just as much as by one it thinks is too high. The legislature, as it does when it creates any administrative board, sought to channel all problems of one type through one body so that all similar claims would be determined by the same standard. The legislative intent to keep election expense matters out of the courts is emphasized by the "exclusive remedy" language of the statute; the clear import is that one must either bring his claim before the board or pay the specified expenses without challenge.

It is true, as the court below noted, that the courts must be the ultimate interpreters of any statute. The respective roles of agencies and courts in matters of law has been well defined by our decisions, and were recently summarized in *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, 518 P. 2d 453:

"The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature.

"While the administrative interpretation of a statute should be given con-

sideration and weight it does not follow that a court will adhere to the administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests within the courts." (Syl. Nos. 4, 5.)

But the appeal statute's "conclusive" and "exclusive" language is not inconsistent with that concept. Prior to the enactment of K. S. A. 60-2101 (a), prescribing the appellate jurisdiction of district courts generally, we consistently held that no *appeal* from an administrative decision would lie unless specifically provided for. *City of Hutchinson v. Wagoner*, 163 Kan. 735, 186 P. 2d 243; *In re Chicago, R. I. & P. Rly. Co.*, 140 Kan. 465, 37 P. 2d 7. That did not mean, however, that an administrative agency could be the ultimate interpreter of the law. If an agency acts beyond the scope of its powers, and no appeal is available, relief can always be sought in equity. *Gray v. Jenkins*, 183 Kan. 251, 326 P. 2d 319. In *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 360 P. 2d 29, while holding that no appeal would lie from the particular order of the board of tax appeals there challenged, we observed:

"However, the courts are always open to hear meritorious complaints against illegal or oppressive acts of non-judicial public boards and officials, either at the instance of the state or of a private citizen especially aggrieved thereby; but not by appeal where no statute confers a right of appeal. In the absence of a statutory right of appeal, judicial redress for illegal, fraudulent or oppressive official conduct must be invoked through some appropriate extraordinary legal remedy recognized in our practice—injunction, mandamus or quo warranto. (*In re Chicago, R. I. & P. Rly. Co.*, supra, p. 468; *State, ex rel., v. Davis*, 144 Kan. 708, 710, 62 P. 2d 893.)" (P. 703.)

The state election board is therefore *not* the final arbiter of the statute, despite its language; if the board acts beyond its authority, hence "illegally," it is subject to judicial review through a proper action.

The requirement that a litigant must have exhausted his administrative remedies is most commonly encountered by plaintiffs. In *Moore v. Starkey*, 185 Kan. 26, 340 P. 2d 905, a discharged teacher sued to recover salary for the term remaining since he saw no just cause for removal. Plaintiff had not appealed the dismissal to the county superintendent as provided by statute, and this court affirmed a dismissal of his suit. In *Van Valkenburgh v. State Board of Social Welfare*, 211 Kan. 754, 508 P. 2d 875, plaintiff sued for welfare benefits under a contract theory. In affirming summary judgment for defendant this court stated: "The remedy for persons deprived by government officials of their rights under statutes designed for their benefit has always been thought to be the pursuit of any pre-

scribed administrative remedy or, in the absence of an administrative remedy, a suit in equity to compel the performance of the officials' duty." (P. 757.) And in *Thompson v. Amis*, 208 Kan. 658, 493 P. 2d 1259, we held that the civil service commission was engaging in a quasi-judicial act when considering an employee's dismissal, and an appeal therefore was open under K. S. A. 60-2101 (a). Since plaintiff could have appealed as a part of the administrative process, her action in equity was improper because she had not exhausted her administrative remedy.

The fact that in this case the school district raised its legal argument as a defense is not significant; the effect of bypassing the administrative remedy must be the same. All the policy considerations underlying the exhaustion doctrine are present whether a contention is advanced by a plaintiff or a defendant. Other jurisdictions, when confronted with the proposition, have so concluded. Thus, in *Corpstein v. United States*, 262 F. 2d 200 (10th Cir., 1958), the federal government sought to collect penalties for wheat grown in excess of marketing quotas. The defendants argued the allotments were arbitrary and capricious, but because they had not challenged those allotments by the administrative remedy set out in the Agricultural Adjustment Act their defense would not be heard. Likewise, in *United States v. Lillard*, 143 F. Supp. 113 (W. D. Mo., 1956), the defendant's failure to appeal an agricultural acreage allotment foreclosed him from contesting it in an action for penalties. The court concluded that because of his failure to seek an administrative review "the original determination of those matters is final and defendant may not defend this action on the grounds of any allegedly wrong administrative determinations. [Citation omitted.] Defendant's failure to exhaust his administrative remedies not only bars defendant from contesting the County Committee's determination but also leaves this Court without any legal power to grant defendant any relief from the penalty imposed." (Pp. 119-20.)

A similar result was reached by the supreme court of California in *People v. West Publishing Co.*, 35 C. 2d 80, 216 P. 2d 441 (1950), wherein the state sought to enforce liability for use taxes. The defendant had not properly "petitioned for redetermination" by the state board of equalization. The result was that its defenses were lost, the court saying:

"Appellant argues that since its objections to the use tax assessment only involve questions of law as distinguished from pure issues of fact, it was not re-

quired to present its contentions first to the board before asserting them in this litigation. But in the effective performance of its designated functions under the terms of the Use Tax Act, the board necessarily must pass upon matters of both law and fact, and though the '[a]dministrative determination of questions of law is subject to judicial review upon which the courts may substitute their own judgment for the administrative determination' [citation omitted], the board nevertheless should be afforded the opportunity to rectify any determination it has made and consider a revision of its tax assessment. [Citation omitted.]" (P. 88.)

The net result is that the school district here should have appealed its grievance over the statement it received to the state election board. When it failed to do so within the statutory time, its statutory liability became fixed and could be enforced in the present action. The effect of the judgment below was to enforce that liability and it will be affirmed regardless of the reasons assigned. (*Wallace v. Magie,* 214 Kan. 481, 522 P. 2d 989; *City of Hutchinson v. Hutchinson, Office of State Employment Service,* 213 Kan. 399, 517 P. 2d 117.)

In its cross-appeal the state also specified as error the failure of the trial court to award attorney fees. This point was neither briefed nor argued and is deemed abandoned. (*Basker v. State,* 202 Kan. 177, 446 P. 2d 780; *Tate v. State,* 196 Kan. 435, 411 P. 2d 661.)

The judgment is affirmed.

APPROVED BY THE COURT.

MILLER, J., not participating.

SCHROEDER, J., dissenting: In this action the school district seeks to have the Supreme Court construe the meaning of K. S. A. 25-2201 (*b*). Resort to the election board for an authoritative ruling would have been futile. If the statute is construed as the appellant insists it should be construed, the assessment of direct election expenses on the facts in this case by the county election commissioner was erroneous and beyond his statutory authority.

The extent of the state election board's administrative power does not encompass the power to make *an authoritative ruling* on the construction of the statute in controversy.

The county election commissioner is authorized under the statute to send statements for election expenses only to governmental subdivisions responsible for election expenses under K. S. A. 25-2202. A statement for election expenses sent to one *not responsible for*

*such expenses* would be beyond the authority or jurisdiction of the county election commissioner.

In *Capland v. Board of Dental Examiners,* 149 Kan. 352, 87 P. 2d 597, the court held:

"While courts are not permitted to substitute their judgment for that of administrative bodies, they are definitely charged with the duty of determining whether the judgment rendered is unreasonable, arbitrary, oppressive, discriminatory *or in excess of administrative powers.*" (Syl. ¶ 2.) (Emphasis added.)

*Butler v. Rude,* 162 Kan. 588, 178 P. 2d 261, is directly in point. There the court relied upon the rule above quoted and discussed the relationship between administrative agencies and courts. It permitted a direct attack upon the authority of the State Board of Embalming to adopt certain rules. A request was made for a construction of the statute in the petition and the court sustained the district court's order overruling a demurrer.

The provisions of K. S. A. 25-2204 do not compel a different result. They have no application to these proceedings. The scope of administrative review prescribed therein, extends only to matters of *apportionment,* which matters are not in issue in this action. The appellant is not objecting to the appellee's arithmetic, but to the appellee's *jurisdiction.* A problem of the same statutory nature was encountered in *Tompkins v. Rinner Construction Co.,* 196 Kan. 244, 409 P. 2d 1001. (See dissenting opinion of Schroeder, J., at page 249.)

By denying the school board the right to raise the jurisdiction of the county election commissioner to assess what it conceives to be an illegal charge as a defense to the action, the court has side stepped the issue presented.

It is respectfully submitted the court should construe the statute in question and decide the legal issue before the court.