(638 P.2d 941)
No. 52,532

EUGENE SCOTT, in individual, *Appellant-Plaintiff,* v. UNIFIED SCHOOL DISTRICT NO. 377, Atchison County, Kansas, *Appellee-Defendant.*

Opinion filed December 17, 1981.

*Wesley A. Weathers,* of Ralston & Frieden, P.A., of Topeka, for the appellant.

*Robert D. Caplinger,* of Stillings & Caplinger, Chartered, of Atchison, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: By this appeal, the plaintiff-appellant, a discharged teacher, succeeds in his attempt to bypass the procedures set out in the Kansas Due Process Procedure Act (K.S.A. 72-5436 *et seq.*). He accomplishes this by withdrawing his request for a hearing provided by 72-5438 and filing an independent action pursuant to the Federal Civil Rights Act, 42 U.S.C. § 1983.

In the apparent belief that it did not have jurisdiction of a teacher contract termination controversy save by way of the

appeal provided under the Kansas act, the trial court dismissed the civil rights action. We reverse and remand.

As stated by the appellant, Scott, there are two issues before us: (1) Was this appeal taken in time, and (2) if so, was there error in dismissing on the motion of Unified School District No. 377 (hereafter referred to as the school)?

Very briefly stated, the school board understood Scott had physically injured a student. A special meeting of the school board was called because of this and Scott was notified. He attended the meeting and made some statements as did some others. The board went into "executive session." On reconvening, a resolution was read and adopted by the board. It stated Scott was suspended, with termination to follow, and was entitled to a hearing under the Kansas Due Process Procedure Act.

Scott made a timely request for the hearing but later withdrew the request. Within a week he filed this action.

The petition, in essence, stated that the board had made up its mind by the end of the "executive session" so the "due process" hearing would be useless. As to the school's motion to dismiss, the trial court was required to consider the contents of the petition to be true.

On March 28, 1980, at a hearing scheduled for consideration of Scott's motion for a temporary injunction, the trial court sustained defendant's motion to dismiss for lack of jurisdiction. The transcript reveals the following:

"THE COURT: Well, until we've had the due process hearing, I'm not about to hear it, so I'm going to sustain the Motion to Dismiss, and I think I've already stated my reasons. . . .

"MISS RILEY: Should the defendant file a Journal Entry?

"THE COURT: Yeah, the defendant will prepare a Journal Entry assessing the costs to the plaintiff. . . . On the Court's Order Sheet: 'plaintiff appears in person and by attorneys; defendant appears by attorneys; Motion to Dismiss argued and sustained.' We'll be at recess."

In accordance with local practice, the trial judge thereafter signed a document titled "Judgment or Order," on which had been transcribed the statement of dismissal announced at the hearing as "on the court's order sheet." This document was filed that same day.

Then, following a hearing to settle form, a journal entry was signed by the trial judge and filed on May 5, 1980. On May 15, 1980, Scott filed a motion to alter or amend judgment pursuant to

K.S.A. 60-259. The school then asserted that such a motion was filed out of time because judgment had been entered on March 28, 1980. In response, Scott filed, *inter alia,* an affidavit of Wesley A. Weathers, one of his attorneys, to the effect that a copy of the document filed on March 28, 1980, was not to be found in the file of his attorneys and that an employee of the clerk of the district court for Atchison County had indicated such a copy had never been mailed to his attorneys, but instead put in a box for attorneys to pick up in accordance with local custom. He argued the May 5, 1980, journal entry should be held to be the entry of judgment. In the event the trial court should hold judgment was entered on March 28, 1980, thus rendering the motion to alter or amend untimely, he also filed a motion for relief from judgment pursuant to K.S.A. 60-260.

On August 13, 1980, a hearing was held on Scott's motions to alter or amend judgment and relief from judgment. The trial judge, while indicating he thought a valid judgment had been entered on March 28, 1980, and that "I can't feel honestly that you were taken by too much surprise," denied the motions without finding the motion to alter or amend had been filed out of time, thus, impliedly, at least, indicating that he conceded the March 28 "Judgment or Order" did not amount to a valid entry of judgment. This denial was dictated by the judge from the bench and reduced to a document filed that date. On September 8, 1980, Scott filed his notice of appeal.

The school contends the appeal should be dismissed as not timely filed in that judgment was entered by the document filed on March 28, 1980, and since the motion to alter or amend judgment was not filed within 10 days thereafter, it was not "timely" and thus did not terminate the running of the thirty (30) day appeal time. K.S.A. 60-2103(*a*). Scott argues that since K.S.A. 60-258 authorizes entry of judgment by *either* a journal entry or judgment form where, for whatever reason, both are used, the last filed should control for purposes of appeal. He also argues the document filed on March 28, 1980, was not in strict compliance with the requirements of K.S.A. 60-258 as to judgment forms.

Assuming the document filed on March 28, 1980, to have been a legally sufficient "judgment form," the evidence is undisputed that a copy was not served on Scott's attorneys. Thus, the time for filing post-trial motions or for taking an appeal did not begin to run when it was filed. K.S.A. 60-258 provides in part:

"No judgment shall be effective unless and until a journal entry or judgment form is signed by the trial judge and filed with the clerk of the court. . . .

"When judgment is entered by judgment form the clerk shall serve a copy of the judgment form on all attorneys of record within three days. Service may be made personally or by mail. Failure of service of a copy of the judgment form shall not affect the validity of the judgment."

In *Daniels v. Chaffee,* 230 Kan. 32, Syl. ¶ 1, 630 P.2d 1090 (1981), the supreme court stated:

"Where a district court enters a judgment without giving notice to the parties or counsel as required by K.S.A. 60-258 and Rule No. 134, a valid judgment is entered which is subject, however, to being set aside when attacked by post-judgment motions and proceedings. The time for filing post-judgment motions or taking an appeal from a final judgment entered without the required notice commences to run when there has been a compliance with K.S.A. 60-258 and Rule No. 134."

Rule 134 (228 Kan. lxxii) requires written notice of rulings to parties or attorneys when the parties are affected and have appeared but who are not then present. In this case, of course, both plaintiff and his attorney were present when the trial court granted defendant's motion for dismissal from the bench. Thus, Rule 134 does not appear to be applicable to this case. The requirement of K.S.A. 60-258 that copies of the judgment form be served on all attorneys, is applicable, however, and the time for filing post-trial motions or taking an appeal did not begin to run when the "judgment form" was filed on March 28, 1980, since a copy was not served on plaintiff's attorneys. Since the record does not reflect that a copy was ever served, the time for filing post-trial motions or for taking an appeal did not begin to run until the journal entry was filed on May 5, 1980. Since Scott's motion to alter or amend judgment was filed within ten (10) days thereafter, it was timely and terminated the running of the time to appeal. K.S.A. 60-2103(*a*). The notice of appeal was filed within thirty (30) days of the trial court's denial of the motion to alter or amend judgment, and was therefore timely. Thus, this appeal is not dismissed.

The trial court dismissed the action for lack of jurisdiction based on plaintiff's failure to exhaust administrative and judicial remedies under the Kansas statutes prescribing due process for teacher terminations. K.S.A. 72-5436 *et seq.*

Briefly, the statutes provide that whenever a teacher is termi-

nated before the end of his or her contract term, the teacher shall be given written notice of the proposed termination including (1) a statement of the reasons for termination, and (2) a statement that the teacher may have the matter heard by a hearing committee upon written notice filed with the clerk of the board of education stating that he or she desires to be heard. The hearing committee is to render a written recommendation as to the determination of the issues. After considering this recommendation the board is to decide whether to terminate the teacher's contract and the board's decision is final, subject to appeal to the district court under K.S.A. 60-2101. K.S.A. 72-5443.

The trial court apparently adopted the argument that since it had appellate jurisdiction pursuant to the statutes to review a teacher termination, it lacked jurisdiction of an independent action challenging that termination. This argument is generally correct, but it is not applicable to this case.

The Kansas courts have no inherent *appellate* jurisdiction over the official acts of administrative officials or boards except where the legislature has made some statutory provision for judicial review. However, if such officials or boards act beyond the scope of their powers, and no appeal is provided for, relief can always be sought through such *equitable* remedies as quo warranto, mandamus, or injunction. *Brinson v. School District,* 223 Kan. 465, Syl. ¶¶ 2, 3, 576 P.2d 602 (1978); *State, ex rel., v. Unified School District,* 218 Kan. 47, 50, 542 P.2d 664 (1975). Consistent with this rule, it has been held that if a court has no appellate jurisdiction over administrative decisions, then it has equitable jurisdiction to determine whether the administrative acts were illegal, fraudulent, or oppressive. Equally, if a court has appellate jurisdiction, then it has no jurisdiction in an independent equitable action to examine alleged errors of the Board. *Thompson v. Amis,* 208 Kan. 658, 661-62, 493 P.2d 1259, *cert. denied* 409 U.S. 847 (1972).

This action, however, was not brought as an equitable one, but was brought specifically under 42 U.S.C. § 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Although this is a federal statute, state courts of general jurisdiction are vested with concurrent jurisdiction of § 1983 actions. See *Shapiro v. Columbia Un. Nat. Bk. & Tr. Co.,* 576 S.W.2d 310 (Mo. 1978), *cert. denied* 444 U.S. 831 (1979), and *Martinez v. California,* 444 U.S. 277, 283-84 n. 7, 62 L.Ed.2d 481, 100 S.Ct. 553 (1980). In *Cooper v. Hutchinson Police Department,* 6 Kan. App. 2d 806, 636 P.2d 184 (1981), a case of first impression in Kansas, this court applied the rule of concurrent jurisdiction of § 1983 actions as noted in *Martinez.*

What is the effect of the existence of the state statutory remedy, including appellate review in the district court, and plaintiff's failure to pursue that remedy on his right to maintain a § 1983 action? As plaintiff notes, the majority of courts which have considered similar problems in the context of § 1983 have followed the pronouncement of *Monroe v. Pape,* 365 U.S. 167, 183, 5 L.Ed.2d 492, 81 S.Ct. 473 (1961):

"It is no answer that the State has a law which if enforced would give relief. The federal remedy [§ 1983] is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."

*Monroe v. Pape* dealt with exhaustion of state judicial remedies. In *McNeese v. Board of Education,* 373 U.S. 668, 10 L.Ed.2d 622, 83 S.Ct. 1433 (1963), the court expanded the non-exhaustion rule to state administrative remedies. Some of the subsequent cases simply state the non-exhaustion rule categorically, while others qualify it. In *Gibson v. Berryhill,* 411 U.S. 564, 36 L.Ed.2d 488, 93 S.Ct. 1689 (1973), for example, certain optometrists sought § 1983 relief against the Alabama Board of Optometry while proceedings were pending against them before the Board. They argued that the Board was biased and could not provide a fair hearing. The Supreme Court agreed that the § 1983 action need not await exhaustion of administrative remedies:

"In the instant case the matter of exhaustion of administrative remedies need not detain us long. Normally when a State has instituted administrative proceedings against an individual who then seeks an injunction in federal court, the exhaustion doctrine would require the court to delay action until the administrative phase of the state proceedings is terminated, at least where coverage or liability is contested and administrative expertise, discretion, or factfinding is involved. But this Court has expressly held in recent years that state administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983." 411 U.S. at 574.

A thorough analysis of Supreme Court and federal courts of appeal cases dealing with the exhaustion requirement in § 1983

actions is set forth in *Patsy v. Florida Intern. University,* 634 F.2d 900 (5th Cir.) (*en banc*), *cert. granted* 50 U.S.L.W. 3244 (1981). After reviewing the cases, the court concluded that it was free to hold that an exhaustion requirement *could* be applied in § 1983 actions and did so "absent any of the traditional exceptions to the general exhaustion rule" (634 F.2d at 912). Those traditional exceptions were stated as "*First,* . . . when the prescribed administrative remedy is plainly inadequate because either no remedy is available, the available remedy will not give relief commensurate with the claim, or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury . . . . *Second,* when the claimant seeks to have a legislative act declared unconstitutional and administrative action will leave standing the constitutional question . . . . *Third,* when the question of the adequacy of the administrative remedy is for all practical purposes co-extensive with the merits of plaintiff's claim . . . . *Fourth,* . . . if it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected." 634 F.2d at 903-04.

While we might observe that with certiorari being granted for *Patsy,* "the jury is not yet in" as to which will prevail, a non-exhaustion rule, or an exhaustion rule with qualifications, it does not matter here. An examination of the petition in the instant case reveals that the crux of Scott's claim is that the actions of the school board on February 18, 1980, prior to serving him with notice of termination, rendered the board incapable of rendering an impartial decision under the statutory grievance procedure and violated his right to due process. So even if this court were to adopt the qualified rule as to exhaustion of state administrative remedies in § 1983 actions, exhaustion would not be required here: "the question of the adequacy of the administrative remedy . . . was for all practical purposes identical with the merits of [plaintiff's] lawsuit." *Gibson v. Berryhill,* 411 U.S. at 575; *Patsy v. Florida Intern. University,* 634 F.2d 900, 904.

It follows that Scott's failure to pursue the statutory procedure of K.S.A. 72-5436 *et seq.,* does not preclude this action, and that the trial court erred in dismissing it. This does not mean that Scott will be entitled to relief. On remand, he must still prove his contentions relative to bias and deprivation of due process.

Reversed and remanded.