Leonard J. Dix Rooks County Attorney 3rd Floor, Rooks County Courthouse Stockton, Kansas 67669-1663
Dear Mr. Dix:
You inquire whether the following agreement entitled "contract nursery pig production" is subject to county approval by resolution pursuant to K.S.A. 17-5908.
You indicate that Murphy of Missouri (corporation) is contracting with a landowner to build a swine nursery unit to the corporation's specifications, but paid for and owned by the local landowner (hereinafter landowner-contractor). The corporation will furnish 2,300 piglets to be kept by the landowner-contractor, cared for and fed for forty-five days then returned to the corporation who retains ownership and insures the animals against loss. The landowner-contractor will have eighteen days to prepare the facility for the next shipment of animals. The facility is expected to house and feed sixteen thousand piglets annually.
Your question is whether the facility contemplated by the contract constitutes a swine production facility subject to K.S.A. 17-5908 which authorizes a county to permit or restrict the establishment of a swine production facility by passing a resolution. A valid petition opposing the facility results in a proposition which is submitted to the qualified electors of the county.
The statutory approval process in K.S.A. 17-5908, however, applies to a swine production facility as defined by K.S.A. 17-5903 (s) which states:
 "Swine production facility means the land, structures and related equipment owned or leased by a corporation or limited liability company and used for housing, breeding, farrowing or feeding of swine. The term includes within its meaning only such agricultural land as is necessary for proper disposal of liquid and solid wastes in environmentally sound amounts for crop production and to avoid nitrate buildup and for isolation of the facility to reasonably protect the confined animals from exposure to disease."
The definition requires the facility include land, structures and related equipment owned or leased by a corporation and used for housing, breeding, farrowing and feeding of swine. The land, structures and related equipment which comprise the contract facility in question are not owned or leased by the corporation but rather are the property of the landowner-contractor. So, while clearly the contract facility is a swine facility which will house and feed swine, it is not a swine production facility as the term is defined in the act which requires the corporation own or lease the agricultural land, structures and equipment.
The agricultural corporations act, K.S.A. 17-5902 et seq., does not prohibit a corporation from contracting with a landowner/farmer. A production contract between a corporation and a farmer cannot be construed as the corporate ownership or lease of agricultural land, K.S.A.17-5904(b). It states:
 "Production contracts entered into by a corporation, trust, limited liability company, limited partnership, or corporate partnership and a person engaged in farming for the production of agricultural products shall not be construed to mean the ownership, acquisition, obtainment or lease, either directly or indirectly, of any agricultural land in this state."
In order to qualify as a production contract, a corporation must contract with a person engaged in farming for the production of agricultural products. See Attorney General Opinion No. 92-115 (the farming must be for the agricultural product which is the subject of the production contract). In order for the contract in question to qualify as a production contract, the landowner-contractor must be engaged in farming which is defined in pertinent part as the production of livestock, K.S.A. 17-5903 (h). Thus, our question turns upon whether the landowner-contractor's feeding of swine constitutes the "production of livestock."
Because the term is not defined in the act, we must interpret it to give it the effect intended by the legislature. State, ex rel., v.Unified School District, 218 Kan. 47 (1975). A well recognized rule for determining legislative intent is that identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything to indicate a different meaning was intended. Kilner v. State Farm Mut. Auto. Ins. Co., 252 Kan. 675
(1993).
The terms producer and livestock are defined in the public livestock market act (K.S.A. 1995 Supp. 47-1001 et seq.) which deals with producing livestock. Since there is no indication that the legislature intended that a producer of livestock be different than one engaged in the production of livestock we look to the definition contained therein. A producer is defined as any person engaged in the business of breeding, grazing or feeding livestock, and livestock is defined to include swine. K.S.A. 1995 Supp. 47-1001, subsection (d) and (b) respectively. The landowner-contractor of the swine facility in question will be feeding livestock and thus engaged in farming.
It is our opinion that the swine facility contemplated in the contract between a corporation and a landowner-contractor, engaged in farming, is not subject to the approval process found in K.S.A. 17-5908 because it is not a swine production facility as defined by K.S.A. 17-5903 and because it constitutes a production contract which is not subject to the proscription against corporate farming found in the agricultural corporations act (commonly known as the corporate farming act). We note that the contract swine facility may however be subject to other statutes which govern the production of livestock, such as the feedlot statutes. See Attorney General Opinion No. 94-129 (dealing with the feedlot exception to the proscription against corporate farming found at K.S.A.17-5904). The question of what other statutes govern the swine facility contemplated by the contract in question is however outside the scope of this opinion.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:GE:JLM:jm