A. R. CORMACK v. NELSON WOLCOTT, *as Register of Deeds of Russell County.*

ABSTRACT BOOKS; *Register of Deeds; Mandamus.*   The register of deeds will not be compelled by mandamus to permit any person to make copies of the entire records in his office, for the purpose of making a set of abstract books for private use or speculation; and no such right is given by § 211, chapter 25, Compiled Laws of 1885.

*Original Proceedings in Mandamus.*

PETITION filed in this court on May 24, 1887, by *A. R. Cormack,* for a writ of mandamus to compel the register of deeds of Russell county to permit the plaintiff to make a set

of abstracts of the titles to real estate in that county; on which petition an alternative writ was by the court granted. The petition states in substance as follows: That the plaintiff was a resident of the county of Ottawa, and on or about the first of March, 1887, desired to become a resident of Russell county for the purpose of engaging in the business of abstracting the titles in that county; that on the 20th day of March, 1887, plaintiff employed A. W. Cormack to go to the city of Russell, in said county, to arrange with the defendant, the register of deeds of said county, to allow plaintiff to put an employé (J. T. Cormack) in said office for the purpose of doing a part of the necessary work in making a set of abstract books of the titles of the real estate in Russell county; that defendant, as such register of deeds, refused to allow plaintiff's employé to go to work in the office and make said examination of the records and make copies thereof, as desired by the plaintiff, for the purpose for which plaintiff desired said copies and information. The plaintiff further shows that for the purpose of making and completing the set of abstract books, it was necessary that the plaintiff and his employés examine and search the records and papers belonging to said office, and make copies thereof; and that plaintiff desired so to do at reasonable times, and in a proper manner. The defendant filed his motion to quash the writ for the reason that the facts therein stated were insufficient in law to entitle the plaintiff to the relief sought.

The opinion herein was filed at the October session, 1887, of the court.

*Thompson & Midgley*, for petitioner.
*H. L. Pestana*, and *W. G. Eastland*, for defendant.

Opinion by CLOGSTON, C.: The defendant's motion to quash must be treated as a demurrer to the petition, and the only question is, Was the plaintiff entitled to an examination of the records and papers in the office of the register of deeds of Russell county, for the purpose of making a set of abstract

books of the titles to the real estate in that county? The statute under which plaintiff claims the right to make this examination of the records in question, is as follows:

"Every county officer shall keep his office at the seat of justice of his county, and in the office provided by the county, if any such has been provided; and if there be none established, then at such place as shall be fixed by special provisions of law; or if there be no such provisions, then at such place as the board of county commissioners shall direct; and they shall each keep the same open during the usual business hours of each day (Sundays excepted); and all books and papers required to be in their offices shall be open for the examination of any person." (Comp. Laws of 1885, ch. 25, § 211, p. 299.)

The statute also defines the duty of the register of deeds:

"The register of deeds shall have custody of, and safely keep and preserve all the books, records, deeds, maps and papers deposited or kept in his office." (Comp. Laws of 1885, ch. 25, § 90, p. 281.)

Before the plaintiff can maintain his claim in an action of this kind, he must show affirmatively that the right claimed, and which is denied by the defendant, is a clear legal right, and one of which there can be no doubts or exceptions. The writ of mandamus lies only for this kind of a right. A public officer can be compelled to do such acts as the law requires to be performed, and none other. The plaintiff claims that the records in the office of the register of deeds are public records, which every person has a right to inspect, examine, and copy, at all reasonable times, and in a proper way; that the register cannot deny access to his office or books, for such purpose, to any person coming there at a proper time, and in an orderly manner; and that the register must transact the business of the office, and allow persons reasonable facilities to exercise this right in that office. On the other hand, the defendant insists that while the records are public records, and that all persons have a right to examine the records and books of that office at all reasonable times, yet this right is controlled to some extent, by the objects for which the examination is made, or the use to be made of such information; and that,

as in this case, where the information is to be used for the purpose of private speculation and gain, solely for the benefit of the plaintiff, for no public use or purpose, and not for the purpose of an examination of any title or interest of the plaintiff therein, and not as an attorney or agent of some person having an interest in lands, but solely for the purpose of selling said information to others for compensation and speculation, the privilege will not be granted.

The question is an embarrassing one, and we are not free from doubt. At common law, parties had no vested rights in the examination of a record of title, or other public records, save by some interest in the land, or subject of record. So no authorities at common law can throw any light upon this question—the practice of making abstract records being of more recent date. In some states, the right has been recognized and regulated by law; in others, abstracts are made by permission of the register of deeds; but in this state, no action of the legislature has been had. Then, under the provisions of the statute above quoted, the right of the plaintiff must be found, if at all.

The primary purpose of making and keeping a record of the titles to land is that the title and its history may be preserved and protected, so that the information there contained may be obtained by those who seek it. Without these records there would soon be such uncertainty in the title to real estate as would render it almost valueless, or involve its owners in endless litigation to protect it. Necessity then requires that these records shall be correctly made, and when so made, to be safely and securely kept. The law has imposed this duty upon the register of deeds, and when any persons desire to inspect the same, that inspection must be under the immediate eye and observation of the register of deeds, or his deputy. Otherwise, that provision of the law that requires him to "safely keep," would impose a duty without the power to perform it. Then the right to inspect must of necessity have some restrictions, and must be exercised under such rules as the register may fairly impose, that will tend to the safety and

preservation of his trust. The right claimed by the plaintiff for himself and for every person to inspect the records at will and make copies therefrom, must of equal necessity be governed. If this right exists, it exists for all. If the plaintiff may make abstracts of the records and copies therefrom, then others have the same right. Should two or more desire to make an examination at the same time, who is to decide *which* shall first make the examination or abstract, or the length of time to be occupied in making that abstract? With the right come things incidental to that right; facilities for making the copies desired. If no decision or direction is to be made, then each may pursue his work at the same time, and this must be done under the immediate observation of the register. He must either superintend and watch over this work, or furnish suitable deputies to do so. The records must be preserved and safely kept. If this construction were to be given, the public would be called upon to furnish greater facilities for the register of deeds and those desiring to make abstracts in his office, and a large expense would be incurred to carry on a work in which the public had no special interest or benefit; it would be enabling private individuals to engage in speculation for gain at the public expense. In large and populous counties the demand for the right to make abstracts would be great, and much time consumed in their making, and instead of having an office where the records were to be kept for public inspection, it would be converted largely into an office for private individuals — for private and not for public use; and if this right is granted, then could it be denied in any other department of county or state government? The records would be free to be inspected and copied for any and all purposes; for when the right is conceded for private use or inspection, then it is conceded to be equally open for him who examines for idle curiosity or unlawful purposes. If you grant this right to one citizen, you must grant it to another. No distinction can be made between the good citizen and the bad; both must have the same facilities and the same right, independent of the purpose for which the information is sought.

In *Buck & Spencer v. Collins*, 51 Ga. 395, the court said:

"But no person has a right to examine or inspect the records of his office, except in his, the clerk's presence, and under his observation. If he may do this for a minute, the clerk is not 'keeping them safely and securely.' A blot or a scratch may be made in a minute that may alter a record; a leaf may be abstracted in a minute, and if one man may of right take a record book and 'abstract' its contents — work a week upon it, any other man may do it. If a good, honest man has a right to do this, a bad man has the same right; and if this may be done, except under the clerk's immediate inspection, no record can be safely kept. If the complainant has the right to do what he claims, he has the right to keep the clerk's attention from minute to minute, and from day to day, until his book is finished. He has the right to the services of the public officer for months together without pay; for not only the law but every principle of propriety requires that no person shall inspect the books, except under the watchful observation of the clerk."

The supreme court of Colorado, under a law that is identical with that of this State, has decided that the right of a person to examine the records is not open for all. The court in *Bean v. The People, ex rel.*, 7 Col. 202, says:

"We are of opinion that the statute in question was not designed to allow individuals who wish to abstract the entire records for future profit in their private business, the privilege of using continuously the public property, and of monopolizing from day to day, for months and years, a portion of the time and attention of a public officer against his will and without recompense."

The supreme court of Michigan has also decided this question, founded upon a statute much broader than ours. The court says:

"The right once conceded, there is no limit to it until every public office is exhausted. The inconveniences which such a system would ingraft upon public officers: the dangers, both of a public and private nature, from abuses which would inevitably follow in the carrying out of such a right, are conclusive against the existence thereof. . . . The language of the act referred to does not, in clear and unmistakable terms, include a case like the present, and such an one should

not be conferred by construction. The object of the act was to enable persons having occasion to make examination of the records for any lawful purpose, . . . to have suitable facilities therefor." (*Webber v. Townley*, 43 Mich. 534.)

Our statute nowhere intends to give the right to permit the taking of copies of the records. The language is to "make an examination." That examination was intended for persons who desire some information that can be readily gained by personal inspection of the records. The duty of granting this right is imposed upon the register, but it was never intended that the inspection would give the right to make entire copies of the records, and consume his time in watching and protecting the records during the time required to take an abstract of the titles of land in any county. This right of inspection should be exercised only by persons who have an interest in the record, or by some one for them, for the purpose of information, and was not intended to give a right to parties to engage in private speculation in connection with the information there received. The statute provides how copies of all records may be obtained, and prescribes fees to the various officers for furnishing such copies. Those desiring to engage in the abstract business can procure the information or copies as the law provides; and if upon examination the statute does not clearly provide for that class of information, or for copies, then the duty will be upon the legislature to provide it, and not upon the court.

The plaintiff cites but two authorities in support of the right claimed by him. The first case cited is *The People v. Richards, Register of Deeds*, 99 N. Y. 620. In that case there is a remarkable distinction from the one at bar. In that case the relator was a corporation created by a special act of the legislature of New York, and under that statute and charter the company was empowered and authorized to make, and cause to be made, and to procure and pay for such researches, abstracts, including maps and copies of records, as its trustees may deem necessary; and yet under this broad power granted to this company the court refused to grant the right where the

register of the city of New York had allowed the relator to put three men in his office with accommodations for making copies of the records in his office. The petitioner claimed that, considering the great number of records of the city, an abstract could not be made in a lifetime by that company with the men permitted to work in the register's office, and to deny it greater facilities was to deny all the right granted by its charter. The court held in that case that the corporation could make such copies under such reasonable restrictions as the register might impose, and that the regulation imposed was reasonable.

The next case was brought by McLean, in the circuit court of the United States for the southern district of Ohio, asking the court for an order giving the right to the inspection of certain fee books and the judgment docket of that court. The court refused the order, but afterward granted an order giving the right to inspection of certain records in accordance with the fourth rule of the supreme court of the United States, which rule provided for the right of inspecting certain records of the courts of the United States; the court laying down the rule that at common law the right to inspect records and judgments of courts in the United States existed only to the parties to the record, and those having an interest therein. (8 Reporter, 813.) Neither of these decisions can be relied upon as sustaining the right claimed by the petitioner.

It is recommended that a peremptory writ of mandamus be denied.

By the Court: It is so ordered.

All the Justices concurring.