No. 56,927

James R. Tew, *Appellee*, v. City of Topeka Police and Fire Civil Service Commission, *et al., Appellants.*

(697 P.2d 1279)

Opinion filed April 5, 1985.

*Elsbeth D. Schafer,* assistant city attorney, argued the cause and was on the brief for appellants.

*Eugene W. Hiatt,* of Hiatt, Hiatt & Carpenter, Chartered, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: James R. Tew, an unsuccessful applicant for a position with the City of Topeka fire department, filed an original action in the Shawnee County District Court for an order of mandamus. He was successful in receiving part of the relief he sought and the defendants have appealed the mandamus order of the trial court. The defendants named in the action were The City of Topeka Police and Fire Civil Service Commission; the five individual members of the Commission; Brenden J. Long, Secretary of the Commission; and Mayor Doug Wright. The defendants collectively will be referred to as the "Commission" or appellants except where necessary to specifically identify individual defendants.

Tew applied for appointment to the Topeka Fire Department as a firefighter. He took and passed the civil service examination and, on May 25, 1983, appeared before the Commission for an interview. May 26, 1983, the Commission sent Tew a letter stating in part:

"[Y]ou did not qualify as an acceptable candidate for appointment to the Topeka Fire Department at this time. You were not certified by the Civil Service Commission after your oral interview.

"The decision of the board is final and there is [sic] no review or appeal provisions in the Topeka City Ordinances."

On June 3, 1983, Tew wrote the Commission requesting a statement of the reasons underlying the Commission's decision. In response the Commission stated simply that neither the city ordinances nor the Commission's rules provided for review or appeal of its decisions regarding the acceptability of candidates, and that "[a]s stated in the Commission's May 26, 1983, letter to you, you did not qualify as an acceptable candidate for the Topeka Fire Dept. at this time." That response was authorized in a meeting of the Commission held June 8, 1983. The minutes of that meeting read, *inter alia*:

"Moved to recognize the letter from Mr. James R. Tew dated June 3, 1983, and to authorize a reply by the Commission *which does not state any specific reasons for Mr. Tew's rejection by the Commission,* and which refers Mr. Tew to the original letter sent by the Commission dated May 26, 1983. Passed." (Emphasis added.)

Tew and his attorney then sent certified letters to the Commission, requesting access to the records of all applicants for the position. The Commission denied the request because of the

confidentiality of the information sought, but offered to provide Tew access to statistical information alone. Tew then filed this action in mandamus.

In his petition Tew set out the foregoing facts and claimed, first, that the Commission's failure to provide him access to the other applicants' records violated K.S.A. 45-201 *et seq.* (repealed L. 1984, ch. 187, § 17), and second, that the Commission's refusal to state the causes of his rejection for employment violated its own rules and regulations. Tew accordingly sought attorney fees and a writ of mandamus ordering the Mayor, the Commission and the individual commissioners to (a) certify Tew for employment as a firefighter, or (b) in the alternative, state the causes of his rejection, and, in either case, (c) provide Tew access to the records of other applicants interviewed and approved as candidates for employment in the fire department.

The district court refused to order the Commission to certify Tew as an eligible candidate for the position of firefighter, finding that insofar as it labored under no duty to certify him mandamus was an improper remedy. However, the court did find that under the Commission's own rules and regulations it had a duty to state the "cause of rejection" and place it in the applicant's file. The court concluded this requirement had not been met and accordingly ordered the Commission to "fulfill the clear mandate" of its own rules. On the question of Tew's access to the records of other applicants, the court found that under the statutes in effect at the time of Tew's request (K.S.A. 45-201 *et seq.*), the other applicants' files constituted "official public records" for which the Commission failed to meet its burden of preventing disclosure. The court ordered the Commission to first delete confidential ("personally identifiable") information from these records and then provide Tew with the opportunity for inspection. Lastly, finding no evidence of bad faith on the Commission's part, the court denied Tew's request for attorney fees.

The Commission appeals from the court's order requiring it to state the causes of Tew's rejection and provide him access to the other candidates' records. Tew has not cross-appealed from the court's rulings on certification and attorney fees. We will first address the issue of the trial court's order directing the Commission to provide Tew with the specific reasons or causes for rejecting his certification for employment.

The Commission asserts it was error for the trial court to grant a writ of mandamus requiring it to specify the causes for the rejection of Tew as a candidate for employment by the fire department. It is the Commission's position that mandamus is not a proper remedy.

We recently restated the rules governing the use of mandamus in *Arney v. Director, Kansas State Penitentiary,* 234 Kan. 257, Syl. ¶¶ 1-3, 671 P.2d 559 (1983):

"K.S.A. 60-801 defines mandamus as a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust or official station of the party to whom the order is directed, or from operation of law."

"It has uniformly been held that the remedy of mandamus is available only for the purpose of compelling the performance of a clearly defined duty; that its purpose is to require one to whom the writ or order is issued to perform some act which the law specifically enjoins as a duty resulting from an office, trust, or station; that mandamus may not be invoked to control discretion and neither does it lie to enforce a right which is in substantial dispute, and further, that resort to the remedy may be had only when the party invoking it is clearly entitled to the order which he seeks. (Following *Lauber v. Firemen's Relief Assn. of Salina,* 195 Kan. 126, 402 P.2d 817 [1965].)"

"The only acts of public functionaries which the courts ever attempt to control by either injunction or mandamus are such acts only as are in their nature strictly ministerial; and a ministerial act is one which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed. (Following *Martin, Governor v. Ingham,* 38 Kan. 641, 17 Pac. 162 [1888].)"

The Commission, as authorized by law, has adopted its own rules and regulations governing its activities and procedures. The two sections of the rules and regulations pertinent to this proceeding provide:

"Section 14. Satisfactory information furnished to the Board either before or after the examination of *bad character, habits or conduct* on the part of the applicant, shall be *sufficient cause to reject the applicant* or strike the name of the applicant from the eligible list. The findings of the Board in this respect shall be in writing and filed in the folder of the applicant.

. . . .

"Section 22. If the applicant is rejected for any cause *the cause of rejection shall be filed* in the folder of the applicant and shall be confidential *except that the applicant may be permitted to see the written statement of rejection.*" (Emphasis added.)

There are certain well-established principles which govern

the application of an administrative agency's rules and regulations. The rules and regulations adopted by an administrative board to carry out the policy declared by the legislature in the statutes have the force and effect of laws. *Carpenter v. Johnson,* 231 Kan. 783, 789, 649 P.2d 400 (1982). Agency regulations are issued for the benefit of both the agency *and the public,* and an agency must be held to the terms of its regulations. *United States v. 2,116 Boxes of Boned Beef,* 516 F. Supp. 321 (D. Kan. 1981). As a general rule an administrative agency may not violate or ignore its own rules, and where it fails to follow the rules which it has promulgated its orders are unlawful. *Kansas Commission on Civil Rights v. City of Topeka Street Department,* 212 Kan. 398, Syl. ¶ 1, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973). Regulations adopted by an administrative agency must lie within its competence to make, and its regulations may not contravene or nullify controlling statutes. *Kansas Commission on Civil Rights,* 212 Kan. 398, Syl. ¶ 2.

It is generally accepted that an action in mandamus is proper to compel administrative agencies to exercise the powers entrusted to them, to perform ministerial acts and to enforce their rules and regulations. See, 52 Am. Jur. 2d, Mandamus § 162; *Adams v. Marshall,* 212 Kan. 595, 512 P.2d 365 (1973).

We now turn to the facts of this case. At the outset appellants appear to contend that as the Commission is the exclusive judge of an applicant's fitness as a potential employee, its discretion cannot be compelled by mandamus. This argument is clearly misdirected. The trial court did not order the Commission to certify Mr. Tew as acceptable for employment, it merely ordered that the Commission comply with its own rules and regulations and specify the causes or reasons for which he was found "unacceptable." We have previously set forth the applicable sections of the rules and regulations involved in this appeal.

The Commission next argues that because it made no findings of "bad character, habits or conduct" on the part of Mr. Tew under Section 14, the Section 22 requirement it specify the "cause of rejection" was met by the Commission's statement Tew was "unacceptable." The trial judge concluded:

"It is unreasonable for the defendants to argue that the words 'you did not qualify as an acceptable candidate for the Topeka Fire Department at this time' fulfill the clear mandate of Section 22 of the rules. Therefore, the Commission must state

the reason or reasons behind the decision not to certify the plaintiff and place these reasons in the applicant folder of the plaintiff pursuant to Section 22 of the rules."

We agree with the trial court that the Commission's statement that Tew did not qualify as "an acceptable candidate" does not comply with its own Section 22. Section 22 applies when "the applicant is rejected for any cause" and is not limited by Section 14 which only applies in the limited cases of rejection based upon bad character, habits or conduct.

The Commission argues that its conclusion that Tew was not "an acceptable candidate" constitutes the only statement of the "cause of rejection" required under Section 22. We find this argument to be utterly without merit, bordering on the frivolous. "Acceptable" is defined as

"1. that [which] may be received with pleasure; pleasing to a receiver; gratifying; as, an *acceptable* present.

"2. agreeable or pleasing in person; as, a man makes himself *acceptable* by his services or civilities." (Emphasis added.) Webster's New Twentieth Century Dictionary 11 (2d ed. 1956).

The Commission's statement that Tew ". . . did not qualify as an acceptable candidate for appointment" denotes merely its *conclusion* Tew lacked the qualities sought in candidates. The argument Tew was "rejected" because he was "unacceptable" is a tautology, because the former clearly implies the latter. The Commission's decision to reject Tew as a candidate must have been based on a set of particular characteristics in the man's presence, personality and/or background. Assuming *legitimate* reasons underlay the Commission's conclusion Tew was "unacceptable," those reasons (the factors on which they based their conclusion) are capable of expression in writing. That they be expressed with specificity is the "clear mandate" of Section 22 of the Commission's rules. There was no error in the trial court ordering that mandate be carried out.

The next issue on appeal is whether the trial court erred in ordering the Commission to provide Tew access to the files of successful applicants. Initially, appellants contend the district court should not have applied the Kansas public records inspection act (KPRIA), K.S.A. 45-201 *et seq.*, to these proceedings as it was repealed and replaced by the enactment of the Kansas open records act (KORA), K.S.A. 1984 Supp. 45-215 *et seq.*, effective

February 9, 1984. Tew apparently desired access to the files to determine whether his federal constitutional rights to equal protection under the law were violated and whether he was treated differently from other successful applicants without just cause.

The KPRIA was embodied in K.S.A. 45-201 through K.S.A. 45-204. K.S.A. 45-201(a), as it existed in 1983 when Tew made his demands upon the Commission and when he filed this mandamus action, provided:

"45-201. **Official public records open to inspection; exceptions; 'official public records' defined.** (a) *All official public records of the* state, counties, *municipalities,* townships, school districts, *commissions,* agencies and legislative bodies, *which records by law are required to be kept and maintained,* except [1] those of the district court concerning proceedings pursuant to the juvenile code which shall be open unless specifically closed by the judge or by law, [2] adoption records, [3] records of the birth of illegitimate children, and [4] records specifically closed by law or by directive authorized by law, *shall at all times be open for a personal inspection by any citizen, and those in charge of such records shall not refuse this privilege to any citizen."* (Emphasis added.)

K.S.A. 45-202 provided that in any case where a person had the right to inspect public records, that person also had the right of access to the records for the purpose of making any photographs desired. Officials who violated the act were deemed guilty of a misdemeanor and were subject to removal from office under K.S.A. 45-203. Finally, the custodians of public records were authorized by K.S.A. 45-204 to charge and collect reasonable fees for photocopies of disclosable records.

During the time Tew's petition for mandamus was pending in the district court, the legislature repealed these provisions and enacted the KORA, now found at K.S.A. 1984 Supp. 45-215 *et seq.* The legislature declared that the public policy of the state is that public records are to be open for inspection unless expressly exempted, and that the act is to be liberally construed and applied to promote this policy. K.S.A. 1984 Supp. 45-216(a), 45-218(a). K.S.A. 1984 Supp. 45-220 sets out the procedures for obtaining access to or copies of records. The thirty-five specific exceptions to the general rule of open public records are contained in K.S.A. 1984 Supp. 45-221, which in pertinent part reads:

"(a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:

. . . .
"(4) Personnel records, performance ratings or individually identifiable records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such."

K.S.A. 1984 Supp. 45-222 vests the district courts, of the counties where the public records are located, with subject matter jurisdiction of claims arising under the act.

Appellants contend the district court should have applied the provisions of KORA retroactively and denied Tew's request under the personnel records exception found at K.S.A. 1984 Supp. 45-221(a)(4). The court refused to give retrospective application to the new act and held that as the requested records did not fall under any of the four exceptions in K.S.A. 45-201(a), and as they were public records, they were subject to inspection under KPRIA subject to certain safeguards established by the trial court.

It is a well-established rule that generally a statute operates prospectively unless its language clearly indicates the legislature intended it to operate retrospectively. *McGraw v. Sanders Co. Plumbing & Heating, Inc.*, 233 Kan. 766, Syl. ¶ 1, 667 P.2d 289 (1983). There is nothing in the new act which indicates any legislative intent that it be applied retrospectively. It is also well established that purely procedural statutes which do not affect substantive rights are ordinarily given retrospective application. *Lakeview Village, Inc. v. Board of Johnson County Comm'rs*, 232 Kan. 711, Syl. ¶¶ 8 & 9, 659 P.2d 187 (1983). Even a cursory reading of KORA makes it clear that the act embodies far more than mere procedural law. It creates substantive rights and liabilities not encompassed by KPRIA and the trial court was correct in its ruling that this action was controlled by the former act.

Having determined that the trial court's choice of law was correct, the next issue is whether the judge properly found the requested personnel records to be accessible under KPRIA. That act defined "official public records" as those required by law to be kept and maintained. K.S.A. 45-201(a) and -204(c)(1). It is clear the rules and regulations of the Commission require it to keep records and files on each applicant. As such rules and regulations have the force of law, the files and records kept in compliance therewith clearly fall within the terms of K.S.A.

45-201(a) as records which "by law are required to be kept and maintained." However, whether the applicants' personnel records are open to inspection is a different matter. Even though the records in question fall within the broad general provisions of KPRIA, it is evident that any personnel file includes personal and confidential information which should not be disclosed to the general public. This long-standing rule of law has been recognized in the new act, KORA. See K.S.A. 1984 Supp. 45-221(a)(4). The trial court in considering the matter stated:

"If the records in question would have been sought by the plaintiff pursuant to the new Kansas Open Records Act, this Court could have only required the defendants to release the names, positions, salaries and lengths of service of any fireman that had already been employed as such at the time of the request. However, it must be remembered at all times that the new Kansas Open Records Act is an affirmative act requiring disclosure. The exemptions articulated under the new Kansas Open Records Act do not require nondisclosure. Rather, the exemptions give an agency custodian the discretion to refuse to disclose information under a claim that the requested record is covered by one or more of the Act's thirty-five exemptions. The exemptions do not require the custodian to do so. Therefore, under the new Kansas Open Records Act, a court may require that a public official provide access to any "public record" not included under one of the Act's thirty-five exemptions while the official is granted the discretion whether he or she wishes to release an exempted record not specifically closed by law. Nothing in the new Act eliminates a person's common law right to access to inspect records which one may show a 'personal interest' in. See *Cormack v. Wolcott,* 37 Kan. 391, 15 Pac. 245 (1887), *Boylan v. Warren,* 39 Kan. 301, 18 Pac. 174 (1888).

"Since the new Act has no bearing on this case and the defendants have failed to meet their burden under the KPRIA, the plaintiff shall be granted access to the records in question. *It is apparent from reading Section 22 of the defendants' rules as well as the defendants' memorandum in support of motion to dismiss that the records sought include confidential information. Thus, the defendants are to delete any personally identifiable information from the records sought.* See *State ex rel Stephan v. Harder,* [230 Kan. 573, 641 P.2d 366 (1982)]. The information to be deleted from the records shall include the names, addresses and social security numbers of the applicants. Likewise, any letters of reference shall be removed from the records sought. See *Harder,* 230 Kan. at 589-90." (Emphasis added.)

In *Harder* this court had under consideration the statutes as embodied in KPRIA. Justice Miller discussed in depth the former act, including its application to confidential information. We held, *inter alia:*

"The Kansas public records inspection act, K.S.A. 45-201 *et seq.,* provides that all official public records which by law are required to be kept and maintained shall be open for public inspection." Syl. ¶ 1.

"The Kansas public records inspection act, K.S.A. 45-201 *et seq.,* impliedly imposes a duty upon public agencies to delete confidential information from an otherwise disclosable public record in response to a request for disclosure of nonconfidential information contained in that public record." Syl. ¶ 3.

"The custodian of nonconfidential official public records has no discretion under K.S.A. 45-201 *et seq.* to withhold those records from public inspection." Syl. ¶ 5.

These principles of law were recognized and applied by the trial judge who, in his order, first directed that respondents "delete any personally identifiable information from the records sought" before providing access to petitioner. The trial judge was correct and justified in doing so.

*Harder* recognizes that certain confidential information must be deleted from otherwise disclosable public records. Although usually raised in the context of discovery proceedings, it is clear that at least a portion of the information contained in personnel files is generally considered confidential. See *Berst v. Chipman,* 232 Kan. 180, 190, 653 P.2d 107 (1982), and cases cited therein. Under *Harder* this confidentiality is preserved even under the broad dictates of disclosure contained in open record statutes such as KPRIA. The trial court did not err in ordering the disclosure of nonconfidential matter from the files.

In view of our holding that the Commission must make available in Mr. Tew's file the specific reasons or causes for his rejection, there would appear to be little necessity at this point to examine the files of other applicants. If, during further proceedings, the specific reasons or causes for rejection as articulated by the Commission become suspect, then the additional files are available subject to appropriate deletion of confidential information, and if any question arises in this connection the court should hold an in camera inspection of the files and order such information to be released as the court finds proper. It is to be noted that similar situations will probably not arise in the future due to the repeal of KPRIA and the enactment of KORA which specifically includes an exception covering personnel files. K.S.A. 1984 Supp. 45-221(a)(4).

The judgment is affirmed as modified.