No. 59,019

HARRIS ENTERPRISES, INC., *Appellant,* v. DENNIS W. MOORE, district attorney, *Appellee,*

CITY OF OLATHE, *Intervenor-Appellee/Cross-Appellant,* and CAROLE and JOHN DUFFIELD, *Intervenors-Appellees.*

(734 P.2d 1083)

60

Opinion filed March 27, 1987.

*L. Franklin Taylor,* of Payne & Jones, Chartered, of Overland Park, argued the cause, and *Barry W. McCormick,* of the same firm, was with him on the briefs for appellant.

*James T. Wiglesworth,* of Perry & Hamill, of Overland Park, argued the cause, and *Gregory M. Dennis,* of the same firm, was with him on the brief for appellee.

*G. Stephen Long,* of Shughart, Thomson & Kilroy, a professional corporation, of Kansas City, Missouri, argued the cause, and *Philip W. Bledsoe,* of the same firm, and *Thomas A. Glinstra* and *George G. Long,* of City of Olathe Legal Department, were with him on the brief for intervenor-appellee/cross-appellant.

*Amy E. Hackler,* of Hackler, Londerholm, Corder, Martin & Hackler, Chartered, of Olathe, argued the cause and was on the brief for intervenors-appellees.

The opinion of the court was delivered by

HERD, J.: The appellant, Harris Enterprises, Inc., appeals from the trial court's determination that criminal investigation records sought to be disclosed by the appellant are exempt from disclosure under the Kansas Open Records Act, K.S.A. 45-215 *et seq.*

This case arose from the following circumstances:

In the early morning hours of January 28, 1983, the Olathe Police Department was called to the home of John and Carole Duffield. The Duffields' son, Paul, had been brutally attacked, and their daughter, Janelle, bludgeoned to death by an unknown assailant. The Duffields' other daughter, Kelly, was missing. Kelly's body was later located frozen and partially nude in a drainage ditch at a lake in Olathe.

Police detectives began their investigation about 5:00 a.m. on the 28th, by making a detailed photographic record of the Duffield home and surrounding area. Sometime between 9:00 and 10:00 a.m. Captain Jeffrey Herrman, of the Olathe Police Department, contacted officials at the Johnson County crime lab and requested their assistance in a blood analysis. Gary Dirks, a technician from the crime lab, arrived sometime thereafter but was delayed from collecting samples for about a half an hour, until the photographic record could be completed.

Sometime during the morning, Captain Herrman directed his officers to perform a field search of the area. The field search involved a systematic examination of the neighborhood around the crime scene, for the purpose of looking for anything unusual

or out of place. In addition to police personnel, approximately thirty off-duty Olathe firemen were called to aid in the field search. Police personnel also conducted a neighborhood canvass which involved door-to-door interviewing of individuals living near the crime scene. No firemen were used in the canvass.

By Sunday, January 30, the Olathe police had eliminated two early suspects: John Duffield, the father of the victims, and an unidentified boyfriend of Kelly Duffield. Consequently, on Monday, January 31, Captain Herrman requested activation of the greater Kansas City Metro Squad. The Metro Squad is designed to assist in the investigation of crimes when a police agency doesn't have the resources to carry out an investigation on its own. The squad is activated by a request from the head of a law enforcement agency to a member of the squad's board of directors, who in turn contacts the remainder of the governing board to obtain approval to activate the squad. In this case, the squad was activated on Tuesday, February 1, 1983, and continued the investigation until February 12, 1983, at which time the squad was disbanded for lack of substantial leads. After the deactivation of the Metro Squad, the Olathe Police Department resumed full control of the investigation.

The investigation of the Duffield murders was still in progress when Michael Cade was arrested for purse snatching on April 11, 1983. When Cade was brought in for questioning, he admitted participation in the purse snatching incident and made a further statement to the effect that he "threw the purse where they found that girl's [Kelly Duffield's] body."

On the evening of April 11, Olathe Police Detective Roger LaRue questioned Cade concerning his involvement in the Duffield murders. This interview was not tape-recorded. During the interview, Cade denied having any knowledge or involvement in the murders. After this interview, LaRue contacted Captain Herrman who advised LaRue to conduct a background investigation on Cade. The following day, April 12, LaRue conducted an investigation of Cade which revealed that Cade had committed similar crimes (*i.e.*, purse snatching) in both Olathe and Emporia and his crimes had involved the cutting or disabling of phone lines. This was significant since the phone lines at the Duffield home had been disabled the night of the crime.

LaRue reported the results of his investigation to Captain Herrman on Wednesday, April 13, at approximately noon. After receiving this briefing, Captain Herrman consulted with other investigators regarding a "theme" to use for his interrogation of Cade. Herrman also contacted the F.B.I. academy at Quantico, Virginia, for suggestions on conducting the interrogation. At approximately 2:45 that same afternoon, Herrman interrogated Cade, which resulted in Cade's full tape-recorded confession to the Duffield crimes. The following day, District Attorney Dennis Moore, Captain Herrman, and Frank Barnes (Olathe Deputy Director of Public Safety) held a press conference at which they announced the arrest and charging of Michael Cade for the Duffield murders. Cade was subsequently convicted and sentenced to life imprisonment. (*State v. Cade,* Johnson County, No. K-44347.)

On February 1, 1984, Harris Enterprises, Inc., the owner and publisher of the Olathe Daily News of Johnson County, formally requested Johnson County District Attorney Dennis Moore to release the criminal investigation records compiled on the Duffield murders. Moore denied the request on February 7, 1984. On February 16, 1984, the appellant, Harris Enterprises, Inc., brought suit pursuant to the Kansas Open Records Act, K.S.A. 45-215 *et seq.,* against appellee Dennis Moore seeking disclosure of the investigation files in the Duffield case. Subsequently, the City of Olathe and John and Carole Duffield were granted leave to intervene as party defendants.

The appellant raised a number of issues regarding the Duffield investigation, including: (1) The use of fire department personnel to process the crime scene; (2) the time of activation of the Metro Squad; (3) the time when the police first became aware that Mr. Cade was a suspect; (4) the manner in which the crime was solved.

After a four-day bench trial, the district court determined the evidence was sufficient to establish a public interest in the disclosure of some of the records sought by the appellant. However, after conducting an in camera inspection of the records, the court held the documents contained no information which would promote the public interest. Accordingly, the court determined "the records contained in the investigation files of the Duffield

murder case are not required to be disclosed" under the provisions of the Kansas Open Records Act, K.S.A. 45-215 *et seq.*

Harris Enterprises has timely appealed, arguing the district court improperly interpreted and applied the provisions of the Open Records Act. The defendant-appellee City of Olathe cross-appealed, contending the district court improperly held the evidence revealed a public interest in disclosure of the Duffield case criminal records.

Before discussing the specific provisions at issue here, we should first examine generally the provisions of the Kansas Open Records Act, K.S.A. 45-215 *et seq.* (KORA). This legislation was originally enacted in 1983 to be effective January 1, 1984. See K.S.A. 1983 Supp. 45-205 *et seq.* However, due to a technical error in its enactment, the act was repealed and the sections reenacted, effective February 9, 1984. See K.S.A. 45-215 *et seq.*

The KORA represented a significant departure from the previous law, the Kansas Public Records Inspection Act (KPRIA), K.S.A. 45-201 through 204 (Ensley 1981) (repealed 1983). See Ryan, Kansas Administrative Law with Federal References, pp. 3-6, 3-7 (1985). The old law mandated that only those records "required to be kept and maintained" by a specific statute be open for inspection for the public. K.S.A. 45-201(a) (Ensley 1981). Since specific statutes required only a small number of records be kept and maintained, only a small number had to be open to public scrutiny. Frederickson, *Letting the Sunshine In: An Analysis of the 1984 Kansas Open Records Act,* 33 Kan. L. Rev. 205, 206 (1985). The KORA, on the other hand, declares it to be the public policy of this state that public records shall be open for inspection by any person unless otherwise provided by the act. K.S.A. 45-216. "Public record" is defined to mean "any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency." K.S.A. 45-217(f)(1). The act further provides that it should be liberally construed and applied to promote the stated public policy.

K.S.A. 45-221(a) sets out in some detail thirty-five categories of records which public agencies are not *required* to disclose. Thus, the act does not prohibit disclosure of records contained within these exceptions, but rather makes their release discretionary

with the official records custodian. ("Official custodian" is any officer or employee of a public agency who is responsible for the maintenance of public records, regardless of whether such records are in the officer's or employee's actual personal custody or control. K.S.A. 45-217[d].)

This court has had occasion to consider the KORA only once since its enactment in 1983. See *Tew v. Topeka Police & Fire Civ. Serv. Comm'n,* 237 Kan. 96, 697 P.2d 1279 (1985). In *Tew,* an unsuccessful fire department applicant sought access to the personnel files of successful applicants. One issue on appeal was whether the district court erred in ordering the commission to provide Tew access to the files. The Commission argued the district court improperly applied the KPRIA since it was repealed and replaced by the KORA. The Commission contended the district court should have denied Tew's request under the personnel records exception found at K.S.A. 45-221(a)(4). This court held that the KORA was not intended to operate retrospectively and the trial court was correct in applying the KPRIA. The court further ruled that the records were accessible under the KPRIA as limited by the trial judge. 237 Kan. at 101-04.

In this case, the district attorney's office denied appellant access to the Duffield criminal investigation files based upon an analysis of the criminal investigation records exception found at K.S.A. 45-221(a)(10). It states:

"(a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:

. . . .

"(10) Criminal investigation records, except that the district court, in an action brought pursuant to K.S.A. 45-222, and amendments thereto, may order disclosure of such records, subject to such conditions as the court may impose, if the court finds that disclosure:

"(A) Is in the public interest;

"(B) would not interfere with any prospective law enforcement action;

"(C) would not reveal the identity of any confidential source or undercover agent;

"(D) would not reveal confidential investigative techniques or procedures not known to the general public; and

"(E) would not endanger the life or physical safety of any person."

Before considering the application of these statutes to the present case, we should first restate the rules of statutory construction:

"The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *State v. Cole,* 238 Kan. 370, 371-72, 710 P.2d 25 (1985).

Under K.S.A. 45-221(a)(10), a public agency cannot be compelled to disclose criminal investigation records unless an action is first brought for that purpose and the court finds disclosure meets the conditions of K.S.A. 45-221(a)(10)(A)-(E). Even if the trial court finds that each of the five requirements are met, it is still within the trial court's discretion whether or not to order disclosure.

The first requirement is that disclosure be in the public interest. The trial court concluded that the burden of establishing that disclosure is in the public interest lies with the person seeking disclosure. Further, the court held that the burden is a two-step process and reasoned as follows:

"The plaintiff must not only show that there is a legitimate public interest to justify [disclosure], but the plaintiff must show that the records to be disclosed will in fact promote and serve that interest. Clearly, if the information contained in the records will not promote a public interest, then the public interest, no matter how lofty, cannot be served and disclosure ought not to be required."

While the court placed the public interest burden upon the requester of the records, it determined that the burden of proof for the other four findings must rest with the governmental agency (custodian). Thus, in the present case, if the appellant had proved disclosure of the criminal records was in the public interest, the appellees must then have shown that disclosure would interfere with some prospective law enforcement action, would reveal the identity of a confidential source or undercover agent, would reveal confidential investigation techniques or procedures not known to the general public, or would endanger the life or safety of some person.

One commentator, after noting the criminal investigation records exception is silent as to who bears the burden of demonstrating probable harm resulting from disclosure, stated:

"The problem may be that the burden of persuasion normally belongs to a plaintiff, when in fact it is *only* the defendant in a criminal records request who has the information needed to show probable interference with law enforcement actions, disclosure of confidential sources or techniques, or endangerment to the life or safety of an individual. Realistically, the most that a plaintiff can show is that releasing the materials would be in the public interest. It should be the custodian's burden to demonstrate that releasing the records would harm one of the specific law enforcement interests." 33 Kan. L. Rev. at 245 n.261.

We find this reasoning persuasive and note that it would be difficult if not impossible for the appellant, which does not have access to the investigation records, to prove that their disclosure would not interfere with law enforcement actions or result in the disclosure of confidential sources or techniques. Accordingly, we hold the trial court properly allocated the burden of proof among the parties. Let us now turn to the issue of whether the court properly (1) concluded that a public interest existed in disclosure of the records; but (2) denied disclosure of the requested records because they contained no information which would promote the public interest.

The KORA does not contain a definition of "public interest," nor has that concept been expressly defined by this court. The trial court noted that, in general, the term means more than "public curiosity." The court further held that, to be a matter involving public interest, it must be a matter which affects a right or expectancy of the community at large and must derive meaning within the legislative purpose embodied in the statute. We hold the trial court accurately defined public interest.

In making its initial determination that the evidence presented at trial was sufficient to establish a public interest in the disclosure of records, the trial court reasoned:

"The evidence presented at trial did establish that inconsistent statements were reported on these matters and that definite disagreements arose between various law enforcement agencies. Indeed, the evidence presented by the intervenor-City clearly demonstrated a pattern of disputed or disagreed upon facts and circumstances arising out of the investigation. In this case, that pattern of disputes and disagreements [was] made public and publicly disseminated. Where public officials thrust controversy concerning their official actions into the public spotlight and attention, this court must conclude that a definable public interest arises to investigate that controversy and to seek a resolution of it."

Despite this determination, the trial court still concluded the

records should not be disclosed because the documents contained no factual information which would promote the public interest. This determination was reached after the trial court conducted an in camera inspection of the records.

We hold the trial court properly concluded that under the circumstances of the instant case a "definable public interest" existed in disclosure of the Duffield criminal investigation files. Further, we find it significant that the KORA expressly provides for an in camera review of the records in controversy by the trial court. See K.S.A. 45-222. Accordingly, it was within the trial court's authority to make an in camera inspection of the records and within its sound discretion to find they contained no information which would "promote the public interest found in this case."

Finally, we note that the legislature's intent in enacting K.S.A. 45-221(a)(10) is clear. Criminal investigation files are sensitive. Raw investigative files nearly always include the names of many innocent people. Where the files are open to public scrutiny, the potential for injury is great. In addition, if criminal investigation files are open, many people with information which might lead to a resolution of the investigation will refuse to disclose such information. Investigations will be badly hampered. Thus, only under very restricted circumstances may the district court require disclosure.

The district court in this case did not abuse its discretion.

The judgment of the trial court is affirmed.