No. 63,293

THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *Appellant*, v.
KANSAS DEPARTMENT OF REVENUE, *Appellee.*

(781 P.2d 726)

Opinion filed October 27, 1989.

*C. W. Crumpecker, Jr.,* of Swanson, Midgley, Gangwere, Clarke & Kitchin, of Kansas City, Missouri, argued the cause, and *Daniel F. Kellogg,* of the same firm, and *Robert C. Londerholm,* of Hackler, Londerholm, Corder, Martin & Hackler, of Olathe, were with him on the brief for appellant.

*James Bartle,* of Kansas Department of Revenue, argued the cause, and *Mark A. Burghart,* general counsel, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by the National Collegiate Athletic Association (NCAA) from an order of the Board of Tax Appeals (BOTA) denying the NCAA an exemption from payment of sales taxes on its purchases.

The statute under which the NCAA claims exemption is K.S.A. 1988 Supp. 79-3606, which provides:

"The following shall be exempt from the tax imposed by this act:

. . . .

"(c) all sales of tangible personal property or services, including the renting and leasing of tangible personal property, purchased directly by a public or private elementary or secondary school or public or private nonprofit *educational institution* and used primarily by such school or institution for nonsectarian programs and activities provided or sponsored by such school or institution or in the erection, repair or enlargement of buildings to be used for such purposes. The exemption herein provided shall not apply to erection, construction, repair, enlargement or equipment of buildings used primarily for human habitation." (Emphasis supplied.)

Effective July 1, 1986, the Kansas Department of Revenue issued Revenue Ruling 19-86-2 which defined "educational institution" as used in 79-3606(c) as:

"[a]n institution with enrolled students which provides an organized curriculum of classes and courses involving the systematic teaching and learning processes

that collectively make up the arts and sciences, the humanities, and other subjects or fields of study that are commonly associated with a classroom environment, and that are taught by certified or bona fide teachers or instructors in a centralized building or buildings that commonly comprise a school building or campus environment."

This revenue ruling was subsequently codified in K.A.R. 92-19-75 as follows:

"(a) 'Educational institution' means an institution with enrolled students that provides an organized and diverse curricula of classes and courses. The curricula shall involve the systematic and structured teaching and learning processes that collectively make up the arts and sciences, the humanities, physical education and other subjects or fields of study commonly associated with a classroom environment. Classes shall be taught by certified or bona fide teachers or instructors in a centralized building or buildings that commonly comprise a school building or campus environment.

"(b) To meet the definition of educational institution, an organization shall provide to its students a field of studies involving the whole course of training the moral, mental and physical faculties. The organization shall provide a variety of studies in various fields of interest. Merely providing a series of classes or instruction on one topic, vocation or skill shall not qualify that organization as an educational institution. Any organization which merely imparts knowledge or information to the public in a general manner through tours, seminars, brochures, mailings, pamphlets, or other publications does not qualify as an educational institution."

The facts concerning the organization, purposes, and activities of the NCAA are not in dispute. The NCAA is a voluntary, unincorporated association of some 800 colleges and universities as well as some 175 other sports-related organizations. The voting membership is wholly composed of four-year colleges and universities and athletic conferences comprised of NCAA member institutions. The NCAA promotes, develops, and regulates twelve intercollegiate sports. In *National Collegiate Realty Corp. v. Board of Johnson County Comm'rs*, 236 Kan. 394, 690 P.2d 1366 (1984), the following was said of the NCAA:

" 'The formation of the NCAA was traced to one particular problem—the need for rules to curb violence in intercollegiate football at the commencement of this century. Thus, in its beginning the NCAA's stated objective was to maintain college activities "on an ethical plane in keeping the dignity and high purposes of education." The growth of the NCAA beyond its primary work of salvaging football and structuring a formal organization has, indeed, been spectacular. From its humble beginnings and rule-making pertaining to one sport, the organization, and its responsibilities, continued to grow and, in 1973, it was organizationally and procedurally revised. Currently, some of its more important organizational purposes are in the area 1) enforcement, 2) championships, 3)

education, 4) broadcasting, 5) rule-making and 6) faculty control and eligibility standards. Of these areas, broadcasting has grown into a multi-million dollar income-generator for the organization.' " 236 Kan. at 396.

At issue in *National Collegiate Realty Corp.* was whether the real estate occupied as the headquarters of the NCAA was exempt from ad valorem taxes as being used exclusively for *educational purposes* within the meaning of K.S.A. 79-201 *Second* and Article 11, § 1 of the Kansas Constitution. We held that the trial court, in reversing BOTA's order, correctly determined that the property was exempt. This prior case discusses the valuable role athletics play in education, and there is no reason to repeat that discussion herein. At issue before us now is whether the NCAA is an *educational institution* and thus entitled to exemption from paying sales tax on its purchases.

Before proceeding further it is appropriate to note there is some dispute between the parties as to the NCAA's history of sales tax exemption. The present headquarters of the NCAA was built in 1972 in Johnson County (previously the headquarters was located in Missouri). On February 24, 1972, the NCAA applied for a sales tax exemption on its headquarters construction project. This application was initially denied but was subsequently granted on April 10, 1972. Sales tax was not paid during construction. The Department of Revenue characterizes this as a project exemption. The instrument itself does not set forth such a limited purpose. The NCAA contends it was exempt until 1986 when its exemption was revoked, and that this action is one seeking reinstatement of its exemption. The revocation was in the form of a letter from the Department of Revenue dated July 31, 1986, which states in pertinent part:

"Your organization has previously received a letter from the Kansas Department of Revenue granting it exemption from Kansas sales and compensating (use) tax as a nonprofit educational institution.

"Enclosed, please find the Department of Revenue's ruling defining the term 'nonprofit educational institution'. Please read this ruling carefully, and, if you feel your organization meets the department's definition, you must send a written request to the department for a new ruling on your organization.

"You must include the following information with your request in order for the department to make a determination as to your organization's status under the Kansas statutes:

"1. A copy of the most recent determination of your organization's nonprofit status from: a) The United States Treasury Department; or b) The Kansas Secretary of State.

"2.  A complete copy of your organization's teaching curriculum.
"3.  A complete list of your organization's teaching staff, noting accreditation or highest educational level attained (i.e. bachelors degree, masters, Ph.D, etc.).
"4.  Your organization's student enrollment and graduation requirements.

"After reviewing the submitted material, the department will make a written determination of your organization's exemption status.

"All letters, determinations, grants of exemption, etc. dated prior to July 1, 1986, are void. In order for your organization to purchase or lease tangible personal property or services exempt from Kansas sales and/or compensating (use) tax, your organization must have a letter from the department granting it tax exemption dated on or after July 1, 1986."

The record reflects that between 1972 and 1986 the NCAA paid sales tax on some of its purchases. However, it is difficult to understand why the 1986 letter was sent to the NCAA if the Department did not consider the NCAA to occupy an exempt status at the time. In any event, the NCAA responded to the letter by making a written request for a new determination of exemption and the same was denied by the Department, which denial was upheld by BOTA. This appeal resulted.

Clearly, the NCAA does not itself have regularly enrolled students, a faculty, a campus, or a qualifying curriculum. Therefore, there are only two means by which the NCAA can prevail:

1. The NCAA must come within the exemption its member colleges and universities are entitled to as educational institutions as an extension thereof; or

2. the regulation (K.A.R. 92-19-75) must be held to be an invalid restriction on the statutory term "educational institution" which the regulation seeks to define.

Before proceeding further, the applicable scope of review and burden of proof should be set forth.

K.S.A. 77-621 provides in pertinent part:

"(a) Except to the extent that this act or another statute provides otherwise:

(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and

(2) the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section, as applied to the agency action at the time it was taken.

. . . .

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

. . . .
(4) the agency has erroneously interpreted or applied the law; [or]
. . . .
(8) the agency action is otherwise unreasonable, arbitrary or capricious."

Under both theories asserted by the NCAA, we are dealing with questions of law concerning statutory construction. Under the first theory (the NCAA being only an extension of the member institutions) the NCAA is, in essence, arguing that under both the statute and the regulation it is entitled to the exemption, and that BOTA erroneously interpreted or applied the law. Under the second theory, the NCAA contends the regulation invalidly limits the statutory exemption. As we stated in *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, Syl. ¶ 2, 691 P.2d 1303 (1984):

"In the absence of valid statutory authority, an administrative agency may not, under the guise of a regulation or order, substitute its judgment for that of the legislature. It may not exercise its powers derived from the legislature to modify, alter, or enlarge the legislative act which is being administered."

Interpretation of a statute is a question of law, and it is the function of a court to interpret a statute to give it the effect intended by the legislature. *State, ex rel., v. Unified School District*, 218 Kan. 47, 49, 542 P.2d 664 (1975). It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained. *Harris Enterprises, Inc. v. Moore*, 241 Kan. 59, Syl. ¶ 1, 734 P.2d 1083 (1987).

What was the legislative intent as to the meaning of "educational institution" contained in K.S.A. 1988 Supp. 79-3606(c)?

Both sides herein find support for their respective positions in the fact that the Department of Revenue had, prior to issuing its 1986 revenue ruling, urged the legislature to define "educational institution" as used in K.S.A. 1988 Supp. 79-3606(c). In December 1980, a Legislative Special Committee on Assessment and Taxation recommended against a statutory definition. To the question, "Should a statutory definition of 'a public or private nonprofit educational institution' be enacted?", the Committee answered:

"Enactment of such a statutory definition could lead to problems in that it may be held to either unduly broaden or restrict the current standards for determining what constitutes an educational institution. The Committee thus supports the current administrative practice of handling applications for such exemptions on a case-by-case basis."

See Report on Kansas Legislative Interim Studies to the 1981 Legislature (December 1980) at 59. Nevertheless, the Department issued its ruling in 1986 which defined the phrase "educational institution."

The Department of Revenue argues that, had the legislature been dissatisfied with the definition adopted in the Department's revenue ruling, it could have nullified it by a statutory amendment. The NCAA argues that the legislature's refusal to adopt a definition evinces an intent to keep the term flexible.

In this day and age of special interest groups, self-improvement programs, and numerous other organizations which have something about their activities that is at least marginally educational in nature, it is not surprising the Department of Revenue found it desirable to set some type of definition to separate the wheat from the chaff of exemption claimants. It is reasonable to conclude that the legislature was aware of the proliferation of organizations which might claim to be "educational institutions" but clearly was concerned that any statutory definition might be too broad or too restrictive. The Department of Revenue was to go on a case-by-case basis and, hopefully, use a reasonable commonsense approach.

Lest one have the impression that trivial amounts of sales tax are at stake in this appeal, it is pertinent to note the evidence showed that the NCAA spends between $750,000 and $1,000,000 annually on athletic awards alone. The NCAA's argument that it is but an arm or extension of its member universities could well have been looked upon with more kindly Department of Revenue eyes had its proponent been a poverty-stricken association of university English departments whose annual purchases consisted of a box of stationery and a few paper clips. Under any fiscal standards, the NCAA is a plump fowl with temptingly luxurious plumage. However, this cannot be a proper consideration.

The NCAA is a truly unique organization. The Department of Revenue likens it to a corporation claiming an exemption because some of its stockholders are exempt. The analogy is not well taken. The activities of the NCAA are of the type the member universities and colleges could accomplish by committee except for the number of schools involved and the complexity

of the world of major intercollegiate sports. The work of the NCAA staff is that which the members have decreed it shall do for the mutual benefit of, and assistance to, the member institutions' educational programs. We must conclude that the NCAA is but an extension of the member universities and colleges and there is no legislative intent that the extension should be denied the exemption available to the member colleges and institutions. We further conclude that BOTA improperly interpreted and applied the statute when it separated the NCAA from its members and denied the sales tax exemption on the basis the NCAA was not an "educational institution."

By virtue of the result reached herein, we do not reach the alternative theory raised relative to the claimed invalidity of K.A.R. 92-19-75.

The order of the Board of Tax Appeals is reversed.

HOLMES, J., dissenting.

SIX, J., not participating.