The Honorable David Adkins State Representative, 28th District 8021 Belinder Road Leawood, Kansas 66206
Dear Representative Adkins:
As Representative for the twenty-eighth district you request our opinion on whether the National Collegiate Athletic Association (NCAA) is subject to the Kansas Open Records Act (KORA), K.S.A. 45-215 et seq. You inquire whether receipt of public funds from state universities is sufficient to bring the NCAA within the scope of the KORA.
The KORA applies to records of public agencies. K.S.A. 1996 Supp. 45-217(f)(1). "Public agency" is defined as:
 "The state or any political or taxing subdivision of the state or any office, officer, agency or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state." K.S.A. 1996 Supp. 45-217(e)(1). (Emphasis added).
As important as the definition of a public agency are the express exclusions from the definition of public agency. K.S.A. 1996 Supp. 45-217(e)(2) provides, in relevant part:
"`Public agency' shall not include:
 "(A) Any entity solely by reason of payment from public funds for property, goods or services of such entity;"
The NCAA is a voluntary not for profit association made up of member universities. It is not incorporated. In National Collegiate AthleticAssociation v. Kansas Department of Revenue, 245 Kan. 553
(1989), the Court had to determine the nature of the NCAA for sales tax purposes. "We must conclude that the NCAA is but an extension of the member universities and colleges. . . ." 245 Kan. at 559. The Court was simply applying Kansas common law that an association is "not a legal entity and can neither sue or be sued." Frey,Inc., v. City of Wichita, 11 Kan. App. 2d 116, 117
(1986).
We do not believe, however, that the legislature intended the term "entity" as used to define public agency to be limited to legal entities. K.S.A. 45-216(a) provides:
 "It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act, and this act shall be liberally construed and applied to promote such policy."
It would make little sense for the legislature to apply KORA to all types of organizations which meet the public funding test except for associations. Giving liberal interpretation to the KORA, we believe that the legislature intended associations to be "entities" for purposes of the KORA. Despite the language in Frey, the members of an association can be sued as a class in state court by naming a representative member(K.S.A.60-223b), so there is a mechanism whereby KORA could be enforced. [In federal court an association may sue or be sued in its own name to enforce a legal right. Federal Rule of Civil Procedure 17(b).]
That an association is an entity for purposes of KORA, and that the entity receives public funds is not decisive of the issue presented, however. As noted, an entity does not become a public agency solely by reason of payment from public funds for property, goods or services of such entity.
In Kneeland v. National Collegiate Athletic Ass'n,850 F.2d 224 (5th Cir 1988), the court had to determine if the NCAA was subject to the Texas Open Records Act. The Texas Act, which was similar to the KORA applied to "the part, section or portion of every organization, corporation, commission, committee, institution, or agency which is supported in whole or in part by public funds. . . ." Tex. Rev. Civ. Stat. Ann. art. 6352-17a, § 2(1)(F). While not contained in the Texas Act, there was an implied exclusion from the act for "private persons or business simply because they provide specific goods or services under a contract with a government body." Tex. Attorney General Open Records Decision No. 1(1973).
The court explained that the NCAA's funding came from three sources: dues, assessments on television gross rights fees, and unreimbursed services and costs incurred by state universities in hosting championship games and tournaments. The court conceded that these funds from Texas universities constituted "public funds." The court said that the college's payment of dues could not be categorized as "unrestricted grants for the general support of the NCAA."850 F.2d at 230-31. Rather, the member universities received specific services and benefits for all funds paid; conventions, publications, statistics, and rules/policies/standards for athletes and team eligibility.
We believe the 5th Circuit's analysis to apply equally well to the KORA. In so finding we assume that the facts stated by the 5th Circuit are complete and accurate and that the NCAA is providing specific services in exchange for the public funds it receives. Like the 5th circuit, we do not view the money received from the Kansas universities as an unrestricted grant. We believe the NCAA falls within the K.S.A. 45-217(e)(2) exception and is not subject to the KORA.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm